STOCKETT *vs.* WATKINS' Admr's.—*June,* 1830.

A was Adm'r. *d. b. n.* of S, and Ext'r. of L, the widow of S. In an action brought against him for the use and occupation of land, and hire of negroes, it appeared that the plaintiff had a deed for certain land and negroes from S, who retained possession until his death, when his widow, who was his sole devisee and executrix, continued that possession, and shortly after filed her bill in Chancery to have the plaintiff's deed, which was absolute in terms, decreed a mortgage; before that cause was decided the widow also died. The defendant, as her Ext'r, and as Ad. *d. b. n.* of S, and in conjunction with her devisee of the land, filed a bill of revivor, and after much litigation, the plaintiff's deed was sustained. The defendant had, in fact, entered upon and rented out the land, and used the negroes conveyed to the plaintiff, after the widow's death, and had frequently said, if the bill was decided in favor of the plaintiff, the rent of the land, and the hire of the negroes, would be payable to him. Upon the decision of the cause, the land and negroes were delivered up to the plaintiff, and the accruing rent of that year paid to him by the tenants. It did not appear under what circumstances the defendant had originally entered into the land. HELD, that the widow's admissions, that she held the land and negroes as the plaintiff's tenant, and by his permission, were not competent evidence to charge the defendant; that the evidence was not sufficient to warrant the inference, that the relation of landlord and tenant subsisted between the plaintiff and defendant, the facts and circumstances not

being such as usually attended a permissive holding; but that he was responsible for the hire of the negroes, during the time he had them.

To maintain the action for use and occupation, it is not necessary for the plaintiff to prove an express contract with the tenant, when he first takes possession, nor an express reservation of a certain rent, nor that the tenant has paid rent. It may be maintained on an implied undertaking where the permissive holding is established ; and if it appears that a certain rent was reserved, the reservation may be used to regulate the damages.

If one enters as a trespasser, the action for use and occupation cannot be maintained.

The law sometimes implies contracts, but never when there is an express contract, or facts exist wholly inconsistent with the contract to be implied.

Where one gets possession of chattels tortiously, and converts them into money, the real owner may waive the *tort*, and sue in *assumpsit* for the proceeds ; and that action has been sustained in some instances where the trespasser has not parted with the chattels. Where they have been returned to the owner, he may still waive the *tort*, and then recover their value for the time of their detention in *assumpsit*.

ERROR to *Anne Arundel* County Court.

This was an action of *Assumpsit*, commenced on the 11th of October, 1825, by *Nicholas Watkins* of *Thomas*, (the intestate of the appellees,) in his life-time against, *Joseph N. Stockett* the appellant, for the use and occupation of land, and for the labor and services of certain negroes. Upon the death of the said *Nicholas Watkins of Thomas, Rachel H. Watkins,* and *Benjamin Watkins*, his administrators, (the appellees) appeared, and were made parties to the suit. The defendant pleaded, *non assumpsit, non assumpsit infra tres annos,* and *actio non accrevit, &c.* Issue to the first, and general replication and issues to the last pleas.

1st. EXCEPTION. At the trial the plaintiff having read the proceedings in Chancery, in the case of *Stockett vs. Watkins,* (6 *Harr. and Johns.* 435,) and the decision of the Court of Appeals, (which by consent are made parts of this bill of exceptions) gave in evidence by one *John Beard,* that in the year 1822, he hired *Sam* the elder, (one of the slaves mentioned in the deed of 28th June, 1816, which was read in evidence from the proceedings

in Chancery,) from *Joseph N. Stockett*, the defendant. And on the 12th October, 1825, settled with *S*, for his hire, at thirty dollars per *annum;* that he objected to the amount, but *S*, replied, " Dont ask me to take off the wages; I cannot do it, for I have to pay it all away to *Watkins*." That afterwards in a subsequent conversation, the witness heard the defendant say, that all the rent of the place, and the hire of the negroes the witness had employed, he *S*, had to pay away to *W*, as the case was then decided. The rent of the place was one thousand pounds of tobacco in 1819, and 1820, by valuation. That *John Stockett* was in possession of this place in 1816, and before, and then sold it to *W*, the original plaintiff. That after his death, Mrs. *Lurana Stockett*, his wife, whom he constituted his executrix, and sole devisee, continued in possession of the land and negroes until her death, and that after her death the defendant, her executor, entered and took possession of the property, and hired out the farm to *Nicholas Knighton*, one year, for one thousand pounds of tobacco; that *Mrs. S*, died in 1818, having made her will, which appears to have been proved 31st October, 1818. And the plaintiffs then called *James Davidson*, who proved, that he was called upon by the defendant *S*, to value the rent of the farm in 1821, and valued it at one thousand pounds of tobacco. And it was rented by *S*, for that sum to *Knighton*. In 1825, the witness rented the place from *S*, the defendant, at the same price. That *S*, the defendant, told him when he took possession, that the rent must be paid to him, or to *W*, the intestate, according to the decision of the cause in the Court of Appeals.

The plaintiff's counsel then offered to prove, that the defendant entered under *Mrs. Stockett*, claiming in her right, and that she had declared to the witness, *Stephen Beard*, that she had entered upon the land and held the negroes, under and by the permission and consent of the intestate *W*, and acknowledged that she held both the land and negroes, as the tenant of the plaintiffs. And the plain-

tiffs further offered to prove, that the defendant, after her death, had entered and held claiming in her right, and further offered to prove the value of the land and negroes during the time the defendant had held the same after the death of *Mrs. S,* by himself or his agents. The defendant by his counsel objected to any proof being offered in this cause relative to admissions or acknowledgements by *Lurana S,* in connexion with the other evidence as offered to be proved to the jury, and the Court [KILGOUR and WILKINSON, A. J.] refused to let the same be given in evidence to the jury, being of opinion that the defendant in this cause was charged in the declaration with his own individual acts, in his individual capacity, and that the plaintiffs could not be permitted by parol proof to establish a relation with another, to make the defendant answerable representatively for the acts of such other person, and of which relation the record exhibited no evidence. The plaintiffs excepted.

2d. EXCEPTION. The plaintiffs having given in evidence, in addition to the matters stated in their first bill of exceptions, the annual value of the land and negroes for which this action is brought, rested their cause. Whereupon the defendant offered in evidence a writ of *Replevin,* issued on the 8th April, 1818, out of *Anne Arundel* County Court, by *Nicholas Watkins of Thomas,* against *Lurana S,* with the avowed object of showing that *Mrs. S,* was then in the adverse possession of the negroes in said writ mentioned, which were admitted to be the same conveyed by *John S,* to *Nicholas W, of T,* by the deed of 28th June, 1816, on which said writ was endorsed "replevied and delivered" by the then sheriff of *Anne Arundel* County, *Robert Welch of Ben,* who being thereupon called by the plaintiffs, testified, that on the service of the said writ, by order of *N. W.* of *T,* and with his permission, the said negroes were not taken out of the possession of *Mrs. S,* but still left with her as the witness had found them. And the

witness informed *Mrs. S,* at the time of service, that his or-
ders were still to leave them in her possession, and she joy-
fully acquiesced therein, and appeared to be thankful. And
thereupon the docket entries in the said cause were produ-
ced by the defendant, by which it appeared that a *returno
habendo* bond was filed in said cause, on the 28th April,
1818, and "property returned," entered by the clerk, and
the said bond was produced, and that the said cause was
entered "discontinued by consent, without costs," at October
term, 1822. And thereupon the plaintiffs offered to prove,
that during the time *Mrs. S,* was in possession of the said
negroes, both before and after the said replevin was issued,
she admitted and declared to the witness, that she held and
enjoyed the same under the permission and consent of the
said *Nicholas W, of T.* To which evidence so offered, the
defendant by his counsel objected, but the Court overruled
the objection, being of opinion that the same was competent
evidence in this cause. The defendant excepted.

3d. EXCEPTION. On the testimony contained in the pre-
ceding exceptions, the defendant by his counsel prayed the
Court to instruct the jury, that if they should be of opinion
from the evidence, that the plaintiff is entitled to recover in
this suit, he can only claim under the issues and upon the
evidence in this cause, so much of the rent for the land,
and of the hire of the negroes, as became due within three
years before the institution of this suit. But the Court
refused to give the instruction, being of opinion that the
declarations of the defendant, proved by the witnesses as
stated in the first bill of exceptions, if believed by the
jury, prevented the plea of limitations from being a bar
to any part of the claim, if the jury should be of opinion
that the plaintiffs have a claim, the Court thinking the
whole evidence proper to be left to the jury. The defen-
dant excepted.

4th. EXCEPTION. In addition to the matters set forth in
the preceding exceptions of plaintiffs and defendant, the
defendant for the purpose of proving that the relation of

landlord and tenant did not exist between the original plaintiff and the defendant, before October term, 1822, offered in evidence the proceedings in an action of ejectment brought to April term, 1818, by the original plaintiff, against *Lurana Stockett*, as the tenant then in possession of certain lands, being the same lands for the use and occupation of which this action is brought. And proved that the said suit was continued in the said County Court, until April term, 1819, when the death of the original party was suggested, upon which a *subpœna* was issued, against one *Richard Stockett*, the devisee of said *Lurana S*, who appeared, was made a party and the cause was continued till October term, 1822, when the suit was discontinued by consent, without costs; to the admissibility of which evidence the plaintiffs objected, because the said record was between different parties, and for other property, and because the said ejectment in its existing state could not legally avail the defendant in bar of the plaintiff's claim, on the issues joined in this cause, but the Court overruled the objection and admitted the evidence. The plaintiffs excepted.

5th. EXCEPTION. The plaintiffs then gave in evidence to the jury, a deed from one *John Stockett* to the plaintiff's intestate, dated the 28th June, 1816, for two tracts of land called *Doden* and *Bridge Hills*, and six negroes therein, named *Sam*, &c. Whereof the said *Stockett* was then seised and possessed, which deed was duly executed, acknowledged and recorded, and is an absolute deed on its face, for the consideration of $800, acknowledged to be paid for the said conveyance. That the said *S*, and his wife *Lurana S*, who were living on the said plantation, at the time of the grant aforesaid, still continued to live there, and to retain possession of the said negroes, until *John S's* death, on or about the 1st March, 1818. Immediately after his death, his widow still continuing on the place, and in possession of the negroes aforesaid, sent for her relation *Stephen Beard*, a competent witness, who proved the same, and told him in great distress that she

understood Mr. *Nicholas Watkins of Thomas*, had an absolute deed of all the land and negroes, and that she desired the witness to go for *Mr. W*, and ask him to come and see her. That he accordingly notified *Mr. W*, who came there, and being asked by *Mrs. S*, if it was true that her husband had given him an absolute deed for the land and negroes aforesaid, said it was so, and produced the deed. That *Mrs. S*, was greatly distressed, and declared she was friendless, that she did not care so much for the land, but that she was desirous to live there as long as she lived. And that she was much attached to the negroes she had brought up, and intended to have set them free at her death. That *Mr. W*, assured her that she was not friendless. That he had always been a friend to her husband, and intended to be her friend; that she might still continue on the place as long as she lived, and he would not disturb her; but as to the negroes, that she had a dower right in the land, which if she would consent to sell at that time, as he *W*, had a good offer therefor, she might have the negroes, and do what she pleased with them; upon which *Mrs. S*, appeared to be perfectly satisfied, and *W*, went away, and the witness believed all matters adjusted, until shortly after he learned that *Mrs. S*, did not intend to comply with her promise to *W*, and had brought suit in Chancery against him. The plaintiffs then read in evidence the case in 6 *Harr. and Johns.* 435, by consent. By these proceedings it appeared among other things, that the original bill was filed by *Lurana S*, executrix, and sole devisee of *John S*, on the        day of        1818, with two exhibits, the deed above mentioned, and the will of *John S*, which are to be deemed parts of this bill of exceptions. That *Mrs. S*, the complainant, died on or about the 31st of October, 1818, having made her will, which also is to be used from the said proceedings as there exemplified, and that subsequently, the defendant, and *Richard L. Stockett*, her devisee, became parties to the said proceedings. The plaintiffs further gave in evidence to the jury, that soon

after *Mrs. S's* death, the defendant took possession of the plantation, and assumed the control and disposal of the negroes, and held the same by himself, or his under tenants, and agents, until July, 1825. And the plaintiff then proved all the facts in relation to the valuation and renting of the land, and use and hire of the negroes mentioned in the other exceptions. And that the witness has since paid the rent of that year, accordingly to *Mr. W,* without any objection from the defendant, who has never asked him for the said rent. The plaintiffs further gave in evidence, that in the months of July, 1825, the defendants delivered up the possession of the said land and negroes, to the plaintiffs intestate, as the said cause was then decided in his favor, in the Court of Appeals. And the defendant gave in evidence to the jury a writ of *replevin* and proceedings under it, as mentioned in the second bill of exception—and those in the action of ejectment in the fourth exception.— Whereupon the plaintiffs called *Stephen Beard* to prove the declarations and admissions of *Mrs. S,* while she was in possession of the said property, as to the nature and character of her possession, which evidence was then admitted by the Court, and given to the jury as herein before stated, and then both parties rested the evidence in this cause.

The plaintiff's counsel then prayed the Court to instruct the jury, upon all their evidence contained in the 5th bill of exceptions, as follows:

1. That it was sufficient in law, to authorise the jury to infer the relation of landlord and tenant, as existing between *W,* and this defendant, during the possession of the said *S,* as aforesaid, and that the said *S,* held the said land and negroes, under the title of *W,* and with his concurrence and permission; and that it is not necessary in law for the plaintiffs, in order to maintain this action, to prove an express contract with *S,* at the time *S,* first took possession, nor any express resurvation of a certain rent,

nor the actual payment of any rent by *S,* to *W,* or to the administrators of *W,* since his death.

2. If the jury believe the several matters stated in the foregoing prayer, that the mere suing out a writ of replevin by *W,* against *Lurana S,* for the said negroes in April, 1818, which was afterwards discontinued by consent without costs of both parties, is not sufficient evidence in law, to establish an adverse possession of the said negroes, against *W,* under which the defendant can protect himself against this action.

3. That if the defendant relies upon the writ of replevin, and the proceedings in that case, to prove the adverse possession of *Mrs. Lurana S,* of the said property, the declarations and admissions of *Mrs. S,* while she was in possession, relative to the nature and character of her possession, or that she held by permission of *W,* are competent legal evidence for the plaintiffs to rebut such a defence, and to show if the jury believe such evidence, that she held and claimed under *W.*

The defendant by his counsel objected to said prayers, and prayed the Court to give the following instructions.

1. That if the jury believe from the evidence in this cause that the original plaintiff in this suit, on the 8th April, 1818, instituted an action of *ejectment* in *Anne Arundel* County Court, against the then tenant in possession, to recover the lands, for the use and occupation of which this suit is brought, that upon the death of said tenant in possession, *subpœna* was issued against *R L. S,* her devisee, who appeared in virtue of said *subpœna,* and was made a party to the suit, that the same was continued till October, 1822, when it was entered discontinued without costs by consent, then the plaintiffs are not entitled to recover in this action, for profits of said land pending the said suit.

2. If the jury are of opinion from the evidence, that on the 8th April, 1818, the plaintiff issued out a writ of replevin against *Lurana S,* executrix of *John S,* and

who possessed said negroes as executrix as aforesaid, to recover the negroes for the hire of which this action is brought,—that the said suit was continued till the death of *Lurana S,* was suggested,—and who died without having closed her administration,—that *subpœna* issued against her executor, the defendant in this cause, who was administrator *d. b. n.* of *John S,* who claimed the said negroes as administrator *d. b. n.* of *John S,*—that the cause continued till October term, 1822, when it was entered, discontinued by consent without costs, then the plaintiffs are not entitled to recover in this suit for the hire of said negroes, during the time aforesaid.

The Court instructed the jury as prayed for by the plaintiff's counsel, and refused to give the instructions as prayed by the defendant's counsel, except so far as those are modified by the instructions already given. Whereupon to the instructions given, and to the refusal by the Court to instruct the jury as prayed by the defendant's counsel, the defendant excepted. And the verdict and judgment being against him, the present writ of error was sued out.

A question was made, and argued in the Court of Appeals, upon the manner in which the judgment was entered up in the County Court: The judgment was on verdict for $1044 51, and the form pursued was as follows: "Therefore it is considered by the Court here, that the said *Rachel H.* and *Benjamin Watkins,* administrators as aforesaid, recover against the said *Joseph N. Stockett,* the sum of $10, 000 current money, (the damages laid in the nar) to be released on payment of $1044 51, (the sum found by the jury) with interest, &c."

The cause was argued before BUCHANAN, Ch. J., EARLE, MARTIN, and ARCHER, J.

*Magruder* and *Alexander* for the appellant, contended, 1. That *John S,* and wife, in the life-time of *John S,* did not hold by permission and consent of appellee's intestate,

and were not liable for use and occupation. 2. That after
the death of *John S*, *Mrs. S*, the widow, entered as a tres-
passer. 3. That if *Mrs. S*, entered under the title of her
husband, she was not liable for use and occupation. 4. That
the nature of *Mrs. S's* holding, was not changed by any acts
or admissions subsequent to her entry. 5. That if the rela-
tion of landlord and tenant ever subsisted between *Mrs. S*,
and *W*, it was terminated by the bringing of the ejectment,
and replevin, by the latter against the former. 6. That
*Richard L. S*, never was tenant to *W*, or held under his
title. 7. That the appellant, by his entry, merely did not
make himself tenant to *W*. 8. That the nature of the ap-
pellant's original holding was not changed, or affected by
his acts or admissions afterwards. 9. That there is no evi-
dence that appellant held as tenant pending the ejectment,
but the contrary. 10. That there is no evidence to render
*Mrs. S*, liable for the hire of negroes. 11. That appellant
is not bound by the acts of *Mrs. S*, in relation to the ne-
groes. 12. That the replevin against appellant is conclu-
sive evidence of adverse holding. 13. That the judgment
is erroneous. 14. That the claim is barred by limitations.
They referred in their argument to the acts of 1809, *ch.*
153; 1811 *ch.* 161. *Fisher vs. State use of Johnson*,
1 *Harr. and Johns.* 416. *Tilghman vs. Stewart*, 4 *Harr.
and M'Hen.* 163. *Purl vs. Duvall*, 5 *Harr. and Johns.*
69. *Riggen vs. Patapsco Co.* 7 *Harr. and Johns.* 294.
2 *Salk.* 515. *Cro. Jac.* 644. *Jackson vs. Aldrick*, 13 *Johns.
Rep.* 106. *Birch vs. Wright*, 1 *Term. Rep.* 378. *Jack-
son vs. Fuller*, 4 *Johns.* 215. *Jackson vs. Tyler*, 2 *Johns.
Rep.* 444. 2 *Wheat. Selw.* 1083, note (3.) 8 *Term.
Rep.* 327. *Jackson vs. Deyo*, 3 *Johns. Rep.* 422. 2 *Johns.
Ca.* 353. *Smith vs. Stewart*, 6 *Johns. Rep.* 46. *Bancroft
vs. Wardell*, 13 *Johns.* 489. 2 *Taunt.* 145.

*Johnson* and *Randall*, for the appellees.

1. Judgments on verdict, should be entered up in the
same way as by confession, 2 *Harr. Ent.* 87. 2. But if it

be error, it can be corrected in this Court under the act of 1809, because that act gives the Appellate Court the same powers in this respect which the County Courts have, and it is admitted that it might have been corrected in the County Court. 3. The deed of 1816, from *John S*, to *W*, *estops S*, from denying his title, and being in possession under that title, he is presumed to be, and treated as his tenant : It cannot be supposed, that he was in, adversely to the title which he had just created: a party in possession under a title, which he has himself created, is always considered as holding by permission of the grantee. 13 *Johns. Rep.* 106. 4. The evidence in the Chancery case, shows that as respects all the parties, (defendant included,) *W*, was admitted to be a mortgagee, and as such he was entitled to the rents. 2 *Johns. Rep.* 75. 2 *Sand. Ev.* 487. 5 *Barn. and Ald.* 604. 5. The admissions of *John and Lurana S*, are evidence against the present defendant, he being a privy with them in estate. 5 *Cowen.* 123, 128. 3 *Johns. Rep.* 499. 2 *Term. Rep.* 53. 6. The replevin only shows that the defendant was in the wrongful possession of the property at the time it was sued out, but that does not prevent the plaintiff from recovering on the implied contract for hire, because the *tort* may be waived, and a contract inferred, as respects the personal property. The case in 1 *Term. Rep.* 378, was for the use and occupation of real estate, and was decided on the statute of 11 *Geo.* 2. But if the *tort* could not be waived by the plaintiff alone, the discontinuance of the replevin with the consent of both parties, amounts to a waiver by both : if the replevin had gone on to a final decision, the judgment must have been for the plaintiff, according to the decision of this Court, and in that action the plaintiff would have recovered his claim in damages. There was an obligation then to pay the money, and where that is the case, the law will imply a promise. 1 *Cowp.* 290. 7. An action for use and occupation, and an ejectment may be brought at the same time. *Cowp.* 246. 2 *Camp.* 14. But in this case the ejectment was not de-

pending, at the institution of this suit, it having been dis-
continued in 1822. The case in 1 *Term. R.* 378, decides only
that where the ejectment suit proceeds to *judgment*, the
action for use and occupation cannot be maintained, because
the judgment shows that plaintiff has not waived the *tort*.
The case expressly decides, that but for the judgment, the
action will lie for the entire possession. It is not denied
that we are entitled to recover prior to the institution of the
ejectment, and after its discontinuance. The prayer of the
defendant below concedes this. If this be the case, it must
be in virtue of a contract of some sort, and as the subsequent
holding was the same as the prior, there must have been a
prior contract to the same effect.

On the question of limitations, they referred to the case of
*Oliver vs. Gray,* 1 *Harr. and Gill,* 204.

EARLE, J. delivered the opinion of the Court.

There were five exceptions taken on the trial of this case,
which is an action for the use and occupation of land, and
for the work, labor, and services of negroes, brought by
the administrators of *Watkins* against *Stockett.* The *first*
and *fourth* were filed by the plaintiffs, and were not used
by them. The remaining three have had a full share of
our attention. The *fifth* exception contains a recapitula-
tion of all the evidence examined by either party. On this
exception, three prayers were submitted by the plaintiffs,
and two by the defendants, and all were decided favorably
to the former. They will all be adverted to, in the opinion
about to be pronounced by this Court. The plaintiffs
repeated all the evidence adduced on their part, and asked
the Court to instruct the jury, if they believed it, that it
was sufficient evidence in law, to authorise them to infer
the relation of landlord and tenant, as existing between
*Watkins* and the defendant, during the possession of
*Stockett*, and that *Stockett* held the land and negroes, under
the title of *Watkins*, and with his concurrence and per-
mission; and that it is not necessary in law, for the plain-

tiffs, in order to maintain this action, to prove an express contract with *Stockett*, at the time *Stockett* first took possession, nor any express reservation of a certain rent, nor the actual payment of any rent by *Stockett* to *Watkins*, or to the administrators of *Watkins*, since his death. The last part of this instruction is certainly correct. To maintain this action for use and occupation, it was not necessary for the plaintiffs to prove an express contract with the defendant at the time when he first took possession, nor an express reservation of a certain rent, nor that the defendant has paid rent to the plaintiffs, or their intestate. Such an action may be maintained on the implied undertaking, where the permissive holding is established; and if it appears in the evidence that a certain rent was reserved, the reservation may be used to regulate the *quantum* of damages. The former part of the instruction is of a different character, and exhibits to view the principal point in the cause. It informs the jury, that the evidence, as repeated by the plaintiff's prayer, is sufficient in law to authorise them to infer the relation of landlord and tenant, as existing between the parties, during the possession of the defendant, and that he held the land and negroes, under the title of *Watkins*, and with his concurrence and permission.

Every part of this evidence we have examined carefully, and we cannot perceive in any part of it, nor in the whole considered together, the presumptive quality ascribed to it. In a word, it does not appear to us sufficient in law, to justify the inference drawn from it by the County Court. In the fall of 1818, *Joseph N. Stockett* entered upon, and took possession of this land, and held it by himself and others, until the year 1825. By what authority, and in what character he possessed it, there is not a particle of direct testimony in the record to show. If he entered and possessed it as a trespasser, there is an end of this question. Out of this tortious proceeding no holding with permission can ever be inferred. If he came in as a trespasser, say the Court, in *Harwood vs. Cheeseman*, 3 *Serg. and Rawl.*

the plaintiffs cannot recover in an action for use and occupation. And in 6 *Johns. Rep.* 49, it is said by the Court, that the purchaser who refused to perform his contract, changed himself into a trespasser, and in that character was liable to be turned out, and made responsible for mesne profits.

In January, 1819, *Joseph N. Stockett* united with *Richard Stockett* in reviving *Lurana Stockett's* bill in equity, against *Nicholas Watkins*, and although as her executor, and as administrator *de bonis non* of *John Stockett*, it was perhaps his duty so to do, to redeem the negroes transferred or pledged by the deed of 1816, he has nevertheless been considered as having taken her place in the contest, and succeeded to the possession of the land in her right.

We will take a short view of the subject in this light, and see whether it will conduct to a different conclusion than that already stated. Whatever the early impressions of *Lurana Stockett* might have been with respect to the rights of *Nicholas Watkins*, under the deed from her husband, in the month of April or May following his death, she filed the bill in Chancery against him, asserting the deed to be nothing more than a mortgage, which she offered herself ready to redeem, and denying positively the absolute rights which he claimed under it. The legal warfare by her thus commenced, was prosecuted with ardor by *Joseph N. Stockett*, until the year 1820, when he succeeded in obtaining from the Chancellor an interlocutory decree, pronouncing the deed in question to be a mortgage. With cheering prospects before him, he pressed the case on to a final decree, and in 1822 Chancellor JOHNSON also declared the deed of 1816 to be nothing more than a mortgage. By *Watkins*, the case was then taken to the Court of Appeals, where it was met by *Stockett* in the spirit such a struggle is calculated to inspire. He employed able counsel to defend the appeal, and continued unceasingly to assert that the land he possessed was pledged only, and not conveyed absolutely to *Nicholas Watkins;* and in this assertion he

persevered, until undeceived by the Court of Appeals, in 1825. What ground is furnished by all this, it may be asked, on which to raise a legal inference that *Joseph N. Stockett* held the land and negroes all the time he possessed them, under the title of *Nicholas Watkins,* and with his concurrence and permission. They are not facts and circumstances which usually attend such permissive holding, and this is the best test, it is said, by which to try a legal presumption. They rather appear to us of an opposite character, and to manifest the actual posture of *Joseph N. Stockett,* to have been inconsistent with the supposed tenancy to *Nicholas Watkins.* His equity proceeding had assumed for him the attitude of a mortgagor offering to redeem the mortgaged premises; and he maintained himself in it until the close of the controversy, and in this situation constantly held the disputed property. How then is it possible, in the teeth of this fact, to infer the relation of landlord and tenant between him and *Nicholas Watkins,* during the same period, and that he enjoyed by his permission? The law sometimes implies contracts, but never where there is an express contract, or facts exist wholly inconsistent with the contract to be implied. But it has been thought that the Court's instruction on the first prayer, is supported by the disclosures made by *Joseph N. Stockett* to *James Davidson* and *John Beard,* a little before, and after, the reversal of the decree in the Court of Appeals. We will briefly advert to them, to show their inadequacy for this purpose. When *Joseph N. Stockett* was about to lease to *James Davidson,* early in the year 1825, he said to him that the rent would have to be paid to him or *Nicholas Watkins,* as the case between them eventuated in the Court of Appeals, at the next June Term, when it was expected to be finally decided. By this he said nothing more than to repeat the disposition the law would make of the accruing rent, in the event of the success of *Nicholas Watkins:* for it is exceedingly clear, that the tenant at the end of the year could not safely pay to any, except the established owner of the land. It bears

but little on the subject under review, having no tendency, that we can perceive, to aid the presumption that the relation of landlord and tenant existed between *Nicholas Watkins* and *Joseph N. Stockett*, during the pendency of their suit in equity, and in the Court of Appeals. The disclosure to *John Beard* is pretty much of the same cast, and appears to us to have little to say to the point before us. It took place in October, 1825, at which time *Joseph N. Stockett* refused to abate the hire of negro *Sam*, and said he had to pay it to *Nicholas Watkins*, and that all the rents of the place, and the hire of the negroes, were to be paid to him, as the suit between them was determined. The event of the suit had rendered him accountable to *Nicholas Watkins* for the hire of the negroes, and the rents of the land, and there is to be recognized in what he said nothing more or less than an acknowledgment of his accountability to him. It affords no foundation on which to raise an inference that he was to be answerable for those demands in any particular form of proceeding, and not the slightest to justify a presumption that he held from *Nicholas Watkins* permissively from 1818 to 1825, to which holding there is not the smallest allusion. His liability he spoke of in general terms, and it would be a most strained and forced construction of his language, to deduce from it a permissive occupation by him of these premises, which his conduct, for a series of years together, flatly contradicts.

To these sentiments of the Court, in relation to the instructions on the first prayer of the plaintiffs, the opinion of the County Court is opposed, on the first prayer submitted by the defendant. They refused on this prayer to direct the jury, that the plaintiffs were not entitled to recover in this action for the profits of the land, pending the ejectment instituted by *Nicholas Watkins* against *Laurana Stockett* in 1818, and discontinued in 1822; maintaining, as they did, the converse proposition, that the action was sustainable for the profits during the same period. This refusal of the Court below, we must then necessarily disapprove of, and

we will add no other remark upon this part of the subject. The two other prayers on behalf of the plaintiffs, as well as the last offered by the defendant, refer to the negro property, and will be disposed of by us in a few words. They rest upon different principles, and we entirely concur, with the Court, that the action as to the work and labor of the servants may be sustained. Supposing *Joseph N. Stockett* to have possessed them as a trespasser from the first to the last of the tedious law suit, between him and *Nicholas Watkins*, the tort may be waived, and the action of *assumpsit* supported. This right to waive the direct injury, and adopt *assumpsit*, is universal, where the chattel taken, has been turned into money. And it has been sustained in some instances, where the chattel has not been parted from by the trespasser. For the distinctions on this subject, *vid. Haubly vs. Trott, Cowp.* 375. The present case however differs in its facts from most of the cases decided on this head. The negroes have been restored to *Nicholas Watkins*, and the claim is for damages for the tort, committed by the trespasser in seising them, and detaining them from the owner. That this kind of tort may also be waived, and an action substituted for it, on the implied contract, is fully established by the modern authorities, and is in fact in principle like the old cases reported on this doctrine. *Lightly vs. Coulston,* 1 *Taunt.* 112, and *Foster vs. Stewart,* 3 *Maul. and Selw.* 197, may be consulted, and they will be found decisive on the point. The last was the case of an apprentice, seduced from the service of his master, where the seduction was waived, and an *assumpsit* for the work and labor of the apprentice, supported by *Ld. Ellenborough,* and the whole Court.

With a few words on the *second* and *third* exceptions taken by the defendant, we will close this opinion. We cannot think with the Court below, that the admissions of *Lurana Stockett,* as to the terms on which she held the negroes, that belonged to her husband's estate, were competent evidence against the defendant. He avowedly possessed thei,

as administrator *de bonis non*, of *John Stockett*, and in fact was a trespasser on the rights of *Nicholas Watkins*, and in neither character could he be prejudiced by the confessions of *Lurana Stockett*. It is true they were bequeathed by her husband to her, but if they had been proved her property, they nevertheless were subject to the testator's debts in his hands.

The *third* exception relates to the act of limitations, and we are of opinion that no part of the plaintiff's demand is barred by time, if, in other respects, the action for it was sustainable. About the period of issuing out the writ, the defendant made acknowledgments to the witness, *John Beard*, that are amply sufficient to revive the remedy, and prevent the operation of the statute, on that portion of the account which had been standing for more than three years.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**