(Decided June 17th, 1896).

---

## MARY J. HOPKINS ET AL. *vs.* OLIVER S. HOLLAND, JR., ET AL.

*Landlord and Tenant—Distraint for Rent after Appeal from Judgment of Ouster—Waiver of Forfeiture—Tenant Wrongfully Holding Over—Writ of Restitution as Estoppel.*

After a landlord has elected to terminate a tenancy, and has obtained a judgment of ejectment from which the tenant appeals and holds over during the appeal, the mere acceptance of rent by the landlord for the time of such holding over does not estop him from enforcing a writ of restitution after the judgment of ouster is affirmed on appeal.

When a landlord obtains a judgment of ejectment against his tenant and the latter appeals therefrom under Code, Art. 53, sec. 4, the tenant retains possession until the determination of the appeal, provided he gives bond to pay all rent in arrears and all rent which shall accrue pending the appeal. In this case, after the appeal was determined in favor of the landlord and judgment of ouster entered, he issued a distraint for the rent due after the expiration of the lease. This was paid by the assignee of the tenant with his consent. A warrant of restitution was then issued in the ejectment case and the tenant applied for an injunction to restrain the execution of the same. *Held,* that the acceptance of the subsequently accruing rent under these circumstances by the landlord was no waiver of his right to enforce the judgment in ejectment, or election to create a new tenancy, because under the statute the tenant was bound to pay rent as long as he remained in possession pending the appeal.

Appeal from the Circuit Court for Harford County.   On March 2, 1894, the appellant, Mrs. Hopkins, leased to the appellee, Holland, her farm in that county, "for the term of one year, with the privilege of three years, the said Holland to pay unto the said Mary J. Hopkins the sum of three hundred and fifty dollars per year rent, and the said Holland agrees to put not less than three hundred pounds of fertilizer per acre on what ground he may plough, the rent to be paid half-yearly, Mrs. Hopkins to find the material for putting up her portion of the line fence between her farm and Mrs. K. C. S. Jackson, and the said Holland to do the work towards building the said line fence."

On March 12, 1895, the lessor instituted proceedings before a justice of the peace against the tenant to recover possession of the farm and obtained a judgment.   The tenant applied to the Circuit Court, and in that Court, on August 2, 1895, the judgment of ouster was affirmed.   On September 4, 1895, the landlady distrained on the tenant for $175, being for one-half year's rent due on September 3. The next day the tenant made an assignment for the benefit of his creditors to Willard G. Rouse, one of the appellees. On September 11th, upon the petition of the tenant, Holland, filed in the matter of his trust estate, an order was passed directing the trustee to pay to the landlady the amount of the rent distrained for and the costs of the distraint, which was accordingly done on the same day.   On September 13th the Circuit Court ordered a writ of restitution to issue in the ejectment suit, and on the same day Holland and his trustee filed a bill in equity setting forth the above facts and alleging that " since the second day of August, 1895, the date of said judgment, and prior to the 13th day of September, 1895, the date of the issuing of said warrant of restitution on said judgment, the said Mary J. Hopkins and August H. Hoenisch, her attorney in fact, accepted the said Holland as tenant on said farm, and have thereby and by reason of their several acts and conduct since the date of said judgment, waived any right they might have had to

dispossess your orators and regain possession of said farm by virtue of said judgment." And that " the said Holland has planted, and there are now growing upon said farm large and valuable crops, which, together with other valuable rights, will be lost to your orators and the creditors of said Holland by reason of the issuing of said warrant of restitution, unless the Court will intervene to protect their rights."

The bill asked that the execution of the writ of restitution be restrained. From an order of the Court below (WATTERS, J.), continuing a preliminary injunction, this appeal was taken.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and PAGE, JJ.

*W. Irvine Cross* and *John L. G. Lee*, for the appellants.

Right to rent continues as long as the term lasts, or as tenant continues to occupy the premises. *Venable Real Prop.*, 45 ; *Peter* v. *Schley*, 3 H. & J. 211. If the tenant is evicted ＊ ＊ ＊ by the landlord or one claiming under him, the right to rent determines ; if, however, the lessee regains possession, the right to rent revives. *McElderry's case*, 1 H. & G. 308 ; *McCubbin's case*, 4 H. & McH. 135. *Martin's case*, 7 Md. 368. LORD COKE observes in *Coke on Littleton*, section 215 *a*, that it is to be said that where the estate of lease is *ipso facto* void by condition, limitation or otherwise, no acceptance of rent afterward can make it have a continuance. In note (1) he says, because the acceptance of rent cannot make a new lease, and the old one was determined. *In Cowper's Rep.*, page 243, case of *Doe* v. *Batten*, LORD MANSFIELD, in an elaborate opinion on the subject of acceptance of rent by a landlord for occupation subsequent to the time when the tenant ought to have quitted the premises, holds that the same is not a waiver on the part of the landlord, of such notice which would defeat the action of ejectment. Is not our case a still stronger

one? We have not only begun our ejectment suit, but have recovered verdict, and then taken rent subsequently accruing. LORD MANSFIELD goes on to say (p. 245), "that the question is *quo animo* the rent was received, and what the real intention of the parties was. If the truth of the case is that both parties intended the tenancy should continue, there is an end to the plaintiff's title; if not the landlord is not barred of his remedy by ejectment."

Here, because we accepted rent, although we were doing all in our power to get rid of the tenant, the other side claim that we renewed the relation of landlord and tenant; that, taking of rent, or distraining for the same, was equivalent to making a new lease. Query—for what term? or on what condition? for one, two or three years? LORD MANSFIELD further cites a case of double rent, after notice, and taking half only, does not import a consent that the tenant shall continue in possession or a waiver by the landlord of his remedy by ejectment. ASTON, JUSTICE, says in the same case: There is no doubt but at the time of the demise laid, the lessor of the plaintiff had a clear right to the possession. The question is, whether he has done any subsequent act which amounts to a waiver of that right. The only act which appears is the acceptance of a single quarter's rent accrued since. I think that is only a waiver of his right to demand double rent under the statute 4 George II, and does not necessarily imply consent that the tenancy shall continue."

Mere taking of rent would not bar our right to recover in the ejectment suit, how much less would it bar our right to possession after we had been successful in our suit? In the notes to *Dumpor's case* (*Smith's Leading Cases*, vol. I, page 125, ninth Amer. ed), the law on this subject is discussed by Mr. Smith. It is conceived that the mere receipt of subsequent rent does not, of its own proper force, operate as a waiver of the forfeiture. It is only evidence of the election of the lessor to retain the reversion and its incidents, instead of the possession of the land, and as an elec-

tion once made and expressed cannot be retracted. And
here he cites several cases. The receipt of subsequent
rent as such, without more, binds the landlord by proving
an election. But rent to the amount of that reserved in the
lease may be received under circumstances showing it to be
paid and accepted merely as a compensation for the use of
the land, and not with the intention of setting up the lease.
Nay, a contrary intention may be expressed at the time of
its receipt. A receipt of rent under such circumstances
would not, it seems, amount to a waiver of the forfeiture.
It is supposed that the naked question of intention to waive
would, in such a case, be left to the jury. The question
should perhaps be, did the lessor receive the rent *eo nomine*
as rent due under the lease? A receipt of rent after the
lessor has, by some unequivocal act, such as bringing eject-
ment, expressed his intention to treat the lease as void,
cannot operate to revive it.

Thare are three instances we wish to note : 1. Taking of
rent after notice. 2. Taking of rent after forfeiture. 3.
Distraint for rent after ejectment. In the first, whether such
action would operate as waiver of notice, is a matter for the
jury to determine what the intention was—the *quo animo*.
In the second, taking of rent is a waiver of a forfeiture re-
lied on before the said rent began to accrue ; why, because
the law looks with disfavor on forfeitures. In the third,
however, there can be no misconstruction, as the verdict in
the ejectment suit is not a fact or action to be qualified. It
is unequivocal, and cannot be misunderstood or miscon-
strued, and distraint proceedings cannot affect it. Notice
to quit cannot be waived without express or implied consent
of both parties, and it differs in this respect from a forfeiture.
*Woodfall*, 421 ; *Dennett*, 13 C. B. 178.

A custom that a tenant may leave his away-going crop in
the barns of the farm for a certain time after the lease is ex-
pired, and he has quitted the premises, is good, and the
landlord may distrain the corn so left for rent in arrear after
six months have expired from the determination of the term.
*Bearan* v. *Lewis*, 1 H. Blac. 5.

They claim that we demanded of Holland the rent. Were we not right to do so? They were giving bond to insure us the rent. Suppose we had been compelled to sue on the bond—would not the Court have held that we ought to have used all means with Holland to collect this rent before we could come to the bondsmen for it? We distrained to save them. The service by lessor upon lessee of a declaration in ejectment for the demised premises for a forfeiture, operates as a final election by the lessor to determine the term ; and he cannot afterward (although there has been no judgment in the ejectment), sue for rent due or covenants broken after the service of the declaration. *Jones & Carter*, 15 M. & W. 718.

*J. J. Archer* and *Willard G. Rouse* (with whom were *E. M. Allen* and *J. S. Young* on the brief), for the appellee.

The appellants rely upon the judgment of the 2d August, 1895, in the ejectment suit of *Holland* (defendant) v. *Hopkins* (plaintiff), in the Circuit Court for Harford County. The appellees, on the other hand, contend that subsequent to the date of said judgment Mrs. Hopkins waived her right to the possession of the property, and the relation of landlord and tenant was renewed. The argument of the appellants' counsel, as contained in their brief, appears to come to this : That after the institution of ejectment proceedings against his tenant (and of course after judgment obtained), within the acceptance of rent by a landlord, nor even his distraint for the same, will, as a matter of law, renew the tenancy ; that having by his suit elected to terminate the lease, he cannot, by any subsequent act *on his part alone*, again set it up as a valid binding lease ; that he could not sue for subsequently accruing rent, and a distress for the same would be an act of trespass. In other words, after determination of the tenancy on the part of the landlord, he cannot of *his own accord merely*, re-establish the relation of landlord and tenant.

Without impugning the correctness of these views, it is

submitted, that after the termination of a tenancy, whether by suit in ejectment or how, the relation of landlord and tenant may be re-established, either by the creation of a new tenancy or a renewal of the old, by the mutual consent or agreement of the parties expressed or implied; and the right of the landlord to enter and eject the tenant became thereby waived.   In the case of one in the possession of lands of another wrongfully from the beginning, while neither party alone can change the relation from that of a trespasser to that of a tenant, yet by mutual consent, expressed or implied, a tenancy may be created, and the wrongful possession become a lawful possession.   In the absence of express agreement the relation of landlord and tenant may be implied from acts of the parties, or facts or circumstances showing an intent to create the relation, or that in law do create it.   1 *Wood on Landlord and Tenant*, section 2 (2d ed.); *Taylor's Landlord and Tenant*, section 19, (4th ed.) Payment of rent by one in the occupancy of the premises, if paid in the capacity of tenant, is evidence of tenancy. And where mutual consent is necessary, submitting to a distress for rent, when it is stated in the proceedings to be due to the party distraining by the party distrained on, is an acknowledgment of a tenancy.   And receipt of rent by a landlord from one in possession is evidence of an acknowledgment of a tenancy.   *Taylor's Landlord and Tenant*, 8th ed., sections 20, 23, and notes; 1 *Wood, Landlord and Tenant*, 2d ed., section 4; and in *Taylor's L. & T.*, 8th ed., section 22, page 25, note 2: " Payment of a quarter's rent by a person in actual occupation is evidence of a yearly tenancy, at the rent proportioned to the quarterly payment." *Morris* v. *Niles*, 12 Abb. Pr. 103.

That is, they are facts evidencing the intention of the parties to create the relation of landlord and tenant—liable, of course, to be rebutted by other facts showing a different intention; as, for instance, if rent be paid or received under terms, or the landlord expressly declares at the time that, notwithstanding his acceptance of the rent, he will still in-

sist on possession, as illustrated by LORD MANSFIELD in "*Doe* v. *Batten*," Cowper's Rept. 243. But, if unrebutted, then they are sufficient to create the relation by implication. In the case of "*Doe* v. *Batten*," which is cited by the appellants in their brief, it is decided that, whether the receipt by the landlord of a quarter's rent, falling due after he had sued in ejectment, and was entitled to the possession of the property, was a renewal of the tenancy and a waiver of his right to the possession, or not, was a question of fact to be decided by a jury, depending upon the intention of the parties.

It is not contended in this case that there was any *express* agreement between the parties to renew the relation of landlord and tenant, after the 2d of August, 1895. In the absence then of an *express* agreement, what are the facts showing an intention to renew the relation of landlord and tenant subsequent to the 2d of August, 1895, from which a renewal of that relation would be *implied* on the 13th of September, following? When we turn to the record in the case, we find that, though Mary J. Hopkins was entitled to the immediate possession of the property on the 2d of August, she in no way attempted to enforce her right till the 13th of September following, but allowed Holland to remain in undisturbed and peaceable possession; that on the 3d of September she requested of him the payment of six months' rent, under the terms of the lease, from the 2d March previous, and on the same day issued distraint papers for the collection of the same, in which she declared, without reservation, that he was indebted to her for said *rent* as *her tenant*, and distrained on his goods and chattels; that a few days later, the 11th September, the appellee, W. G. Rouse, trustee (to whom Holland had in the meantime conveyed his property in trust for the benefit of his creditors), paid her the said rent and cost of distraint under an order of the Equity Court for Harford County, and she then receipted for the same as *rent* and cost of distraint due by *her tenant*, Holland, for six months to the 2d September,

1895. Here, then, we have not only Mrs. Hopkins' acceptance of rent from Holland as her tenant, accruing under the terms of the lease since the date of the judgment, but her *unconditional* acceptance after an *unqualified* demand and distrain for the same. If, then, as was decided in the case of *Doe* v. *Batten*, the *mere acceptance* of rent by landlord, after termination of tenancy, was evidence of intention of the parties to renew the lease, sufficient to be submitted to a jury to find a renewal, can there be any doubt in the minds of this Court that the facts in this case are amply sufficient to sustain the contention of the appellees?

BRYAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Harford County, continuing an injunction. The facts of the case are as follows: Mrs. Mary J. Hopkins leased to Oliver S. Holland, Jr., a farm in Harford County for " the term of one year with the privilege of three years." At the expiration of one year from the beginning of the lease she instituted before a justice of the peace proceedings under Article 53 of the Code to obtain possession of the premises. The justice having rendered judgment in her favor the tenant appealed to the Circuit Court. In that Court a verdict was given for her and judgment was rendered in her favor for costs and for restitution of possession. After this judgment she caused a warrant of distress to be issued for rent alleged to have become due for the half year which had elapsed since the expiration of the lease. On the fifth day of September, 1895, the day after the distraint was levied, Holland conveyed all his property to Willard G. Rouse in trust for the benefit of his creditors. On the tenth day of September Holland filed a petition in the Circuit Court praying that the trustee might be directed to pay the rent and costs of distraint. The trustee consented to the passage of an order for the payment, and the Court passed it and the money was paid on the same day to Mrs. Hopkins. On the thirteenth day of September the warrant

of restitution was issued from the Circuit Court and on the same day Holland and Rouse, the trustee, filed a bill in equity, alleging that Mrs. Hopkins had, by reason of the facts above stated, waived any right which she had to regain possession of her farm by virtue of the judgment of restitution; and praying for an injunction to restrain her from proceeding with the execution of the warrant of restitution. The Court granted the injunction; and, on motion to dissolve, continued it. An appeal was taken by Mrs. Hopkins.

At the time when the distraint was issued Holland was occupying the premises wrongfully and against the will of the owner. His right of occupation had expired; and judgment of *ouster* had been pronounced against him after litigation, in which he had exhausted his means of resistance. When he took his appeal to the Circuit Court he exercised a right given him by the fourth section of Article 53 of the Code. After authorizing an appeal the section proceeds as follows: " And if said defendant shall file with said justice, to be by him transmitted with the papers in said case to said Court, a good and sufficient bond, with one or more securities, conditioned that he will prosecute said appeal and well and truly pay all rent in arrear and all rent which shall accrue pending the determination of said appeal, then the tenant or person in possession of said premises may retain possession thereof until the determination of said appeal." The defendant was not in any manner absolved from his obligation to pay rent; but the condition on which he was permitted to remain in possession of the premises was that he should secure the payment of rent until the determination of the appeal. The statute undoubtedly means that he ought to pay rent as long as he remained in possession of the premises. The appeal kept him in possession, and the bond was required to indemnify the landlord for the damage which the appeal caused. When a tenant by reason of an unsuccessful appeal has been enabled to occupy his landlord's land it is just and reasonable that he should pay for the whole period of his

occupation. It would be very imperfect redress for the landlord to hold that, although he had been entitled to possession during this whole time, yet nevertheless we must deny him compensation for that of which he had been deprived through the forms of law. We do not think that any such result was intended by the statute. It gave the tenant the means of having his claim decided by the Court; but it also provided that this decision should be made without inflicting on the landlord the loss of what might be adjudged to be his right. The case then is simply this; the landlord was entitled to his rent and the tenant was bound to pay it; and thereupon the landlord attempted to collect it, and the tenant procured it to be paid to her. In all this we see no waiver of any right; nor anything except the receipt of what was legally due. When rent is paid by the occupier of land, and is received by the owner, and there is nothing else apparent, the necessary inference is that both parties intended to create a tenancy. It would not be reasonable to suppose that they had any other purpose. But no such purpose could be inferred in the present case.

The usual course to recover the rent under the circumstances which we have detailed is to bring suit on the appeal bond. We do not find it necessary to discuss the propriety of the distress warrant; inasmuch as by the consent of the tenant and his trustee (the complainants in the injunction suit) the money was paid to the landlord. That settled the question finally as between these parties.

*Decree reversed with costs and bill*
*dismissed.*

(Decided June 17th, 1896).