## WEST ET UX. *v.* HUMBLE OIL & RE-FINING COMPANY

[No. 311, September Term, 1970.]

*Decided March 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Kenneth E. Pruden,* with whom was *George T. Burroughs* on the brief, for appellants.

*Lewis A. Noonberg* for appelleee.

HAMMOND, C. J., delivered the opinion of the Court.

In 1957 Humble Oil, the appellee, leased a filling station in Prince George's County from the Wests, the appellants, under a lease which, as extended, ran until 1972. In 1965 the State condemned 31% of the land area of the station and Humble attempted to reduce the monthly rental of $375 by 31%. The Wests would not agree and in 1968 Humble stopped paying any rent. After giving notice of their intention so to do, the Wests on June 21, 1968 instituted a landlord's complaint in the People's Court for Prince George's County and recovered a judgment for $1,125, representing three months' rent, and an order entitling them to repossess the property. Humble appealed to the Circuit Court and twenty-one months later, on March 23, 1970, upon a trial de novo the People's Court judgment was affirmed. Humble paid the judgment and vacated the premises. Thereupon the Wests, relying on Code (1968 Repl. Vol.), Art. 53, Landlord and Tenant, subtitle Tenants Holding Over, §§ 1-8, particularly § 4 (which provides for an appeal bond calling on the tenant, if unsuccessful on appeal, to pay not only "all rent in arrear" but also "all loss or damage which the landlord

\* \* \* may suffer by reason of said tenant's holding over, including the value of said premises during the time he shall so hold over \* \* \*"), sued Humble for its use and occupation of the filling station for the twenty-one months between the People's Court judgment and the affirmance by the Circuit Court, claiming a fair rental value aggregating $46,200, plus interest of $2,772 and $5,000 attorney's fee, less $2,962.50 rental paid by Humble.

Judge McCullough held that the Wests could not rely on § 4 of Art. 53 since Humble was a tenant when the People's Court proceeding was filed and that they were bound by the statutes codified under the subtitle "Landlord Complaint Procedure" of Art. 53, being §§ 39N to 39R of Art. 53, particularly § 39R, under which the appeal bond is made to cover only "all costs and damages mentioned in the judgment, and such other damages as shall be incurred and sustained by reason of said appeal" and in which there is the following limiting language: "the aforesaid bond shall not affect in any manner the right of the lessor to proceed against said tenant \* \* \* for any and all rents that may become due and payable to the lessor after the rendition of said judgment." Humble was granted a summary judgment which limited its liability to the Wests to $5,912.50, being twenty-one times $375 or $7,875 less $2,962.50, the total of the payments Humble figured it owed and had paid the Wests during the twenty-one month period.

We think Judge McCullough travelled the direct legal route to reach the right judicial terminus. Some cases have held that, under an appeal procedure which calls for a trial de novo, the taking of the appeal annuls the judgment appealed from unless the controlling statute provides otherwise and other cases have held that a de novo appeal merely suspends the judgment until the final hearing in the appellate court and, if the appeal is dismissed or the judgment affirmed, the original judgment is restored to full force and effect. 4 Am.Jur.2d *Appeal and Error* § 358. The result in the present case is the

same whatever view is taken since the matter is controlled by statutes which, as we see it, reflect the common law philosophical differences between the cases of tenants who, since they hold over after the expiration of a prior lease, occupy and use the premises without an express agreement as to rent, and cases of tenants whose landlords seek to void their leases calling for a specified rent, and are successful only after the passage of an extended period of time.

In 2 *Tiffany, Landlord and Tenant* § 211 at 1491-2, the author says that at common law a tenant wrongfully holding over had no liability for rent because the obligation to pay rent flows from a contract and ordinarily there is neither a contract to pay rent after the term nor a reservation of rent then to accrue. On the other hand, it often has been held that a tenant holding over without legal justification is liable in assumpsit for use and occupation for the period of the holding over. In § 212 of *Tiffany, op. cit.* at 1495, it is said: "It seems to be immaterial, for most purposes, whether the landlord brings an action of tort for damages from holding over, or an action for use and occupation, which, as stated in the preceding section, he has the right to bring." See also § 306 d at 1872. In § 318 b Prof. Tiffany says:

"The language of the English statute 11 Geo. 2, c. 19, § 14, as well as that of the American statutes based thereon, expressly makes the demise or agreement, if not under seal, evidence bearing on the amount of the recovery. This provision of the statute has been regarded as making the demise conclusive in this regard, and this seems to be the meaning of the statement occasionally found that, in case there is an express contract, no other can be implied. It seems reasonable that the compensation recoverable for the holding and occupation of the premises under an express demise should not be allowed to vary as the landlord may elect to sue for rent

under the express agreement or reservation, or for the value of the use and occupation."

See *Stockett v. Watkins' Admr's*, 2 G. & J. 326, 341: "The law sometimes implies contracts, but never where there is an express contract, or facts exist wholly inconsistent with the contract to be implied."

Section 4 of Art. 53 applies the essential philosophy of the common law in regard to wrongful holdovers. It governs cases in which the tenancy has ended and, in such case, appears to offer the relief given by the language relied on by the Wests that if the former tenant who holds over does not win his appeal from the judgment of dispossession, he may be liable for damages "including the value of said premises during the time he shall so hold over." However, § 39R of Art. 53 reflects the philosophy of the common law in regard to one who is a tenant, bound to pay a specified rent that the landlord has agreed to receive, and whose obligation so to pay continues until the appellate court finally rules that it no longer exists and this is exactly what § 39R indicates his obligation to be.

In *Hopkins v. Holland,* 84 Md. 84, Hopkins leased to Holland a farm for "the term of one year with the privilege of three years." After a year Hopkins instituted proceedings before a justice of the peace under Art. 53 of the Code to obtain possession of the farm. She prevailed and the tenant appealed. The judgment was affirmed on appeal, and she then distrained for the six months' rent which had accrued during the pendency of the proceedings. The Court said at 93-94:

"At the time when the distraint was issued Holland was occupying the premises wrongfully and against the will of the owner. His right of occupation had expired; and judgment of *ouster* had been pronounced against him after litigation, in which he had exhausted his means of resistance. When he took his appeal to the Circuit Court he exercised a right given him by the

fourth section of Article 53 of the Code. After authorizing an appeal the section proceeds as follows: 'And if said defendant shall file with said justice, to be by him transmitted with the papers in said case to said Court, a good and sufficient bond, with one or more securities, conditioned that he will prosecute said appeal and well and truly pay all rent in arrear and all rent which shall accrue pending the determination of said appeal, then the tenant or person in possession of said premises may retain possession thereof until the determination of said appeal.' The defendant was not in any manner absolved from his obligation to pay rent; but the condition on which he was permitted to remain in possession of the premises was that he should secure the payment of rent until the determination of the appeal. The statute undoubtedly means that he ought to pay rent as long as he remained in possession of the premises. The appeal kept him in possession, and the bond was required to indemnify the landlord for the damage which the appeal caused. When a tenant by reason of an unsuccessful appeal has been enabled to occupy his landlord's land it is just and reasonable that he should pay for the whole period of his occupation. It would be very imperfect redress for the landlord to hold that, although he had been entitled to possession during this whole time, yet nevertheless we must deny him compensation for that of which he had been deprived through the forms of law. We do not think that any such result was intended by the statute. It gave the tenant the means of having his claim decided by the Court; but it also provided that this decision should be made without inflicting on the landlord the loss of what might be adjudged to be his right. The case then is simply this; the landlord was entitled to his

rent and the tenant was bound to pay it; and thereupon the landlord attempted to collect it, and the tenant procured it to be paid to her."

See also *Beck v. Troiano* (Mun. Ct. App. D.C.), 138 A. 2d 492.

*Judgment affirmed, with costs.*