Deborah REDMAN, Appellant,

v.

**POTOMAC PLACE ASSOCIATES, LLC, Appellee.**

Nos. 07–CV–335, 07–CV–1255.

District of Columbia Court of Appeals.

Argued Jan. 6, 2009.
Decided May 28, 2009.

---

Richard J. Bianco, for appellant.

Gregory T. DuMont, with whom Roger D. Luchs, Washington, DC, was on the brief, for appellee.

Before RUIZ and FISHER, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

The instant appeal arises from the efforts of appellee Potomac Place Associates, LLC ("Potomac") to convert an apartment building from residential tenant housing to condominiums. Appellant Deborah Redman ("Ms. Redman") was a tenant in the building who claimed the right to continue in that capacity after conversion as a "disabled tenant" under an amendment to D.C.Code § 42–3402.08 that became effective only during the course of Potomac's eviction action against her. We agree with the trial court that the amendment did not operate to benefit Ms. Redman because she was not in lawful possession of the premises at the time the statute became effective.

## I.

Appellant Deborah Redman became a tenant in the apartment building at 800 Fourth Street in Southwest Washington, D.C., pursuant to a 2002 lease. Following negotiations between Potomac and the building's tenants association, Potomac began the process of converting the building from rental units into condominiums. Potomac and the tenants association further entered an agreement whereby the tenants would be permitted to purchase their units (after renovation), or receive a payment of $15,000 if they vacated in timely fashion.

On November 28, 2005, the tenants association held an election pursuant to D.C.Code § 42–3402.03 (2001) in which a majority of the qualified tenants elected to convert the building into condominiums. Officials from the Department of Consumer and Regulatory Affairs ("DCRA") conducted, supervised and subsequently certified the election.

D.C.Code § 42.1904.08 (2001) requires that the owner seeking to convert rental units give tenants 120–days notice of the conversion, and afford them the exclusive right to purchase their units on terms at least as favorable as offered to the general public. If the notice of conversion specifies a date by which the apartment unit shall be vacated, the notice constitutes a valid notice to vacate. *Id.* § 1904.08(b)(3). Pursuant to this section, Potomac served Ms. Redman on May 23, 2006, with notice of its intent to convert the building. The notice stated that if Ms. Redman did not intend to purchase her unit, she must vacate by September 30, 2006.

Ms. Redman chose not to purchase her dwelling unit, yet she did not vacate by the September 30, 2006, deadline. On October 5, 2006, Potomac filed a complaint for possession of Ms. Redman's dwelling unit in the Landlord and Tenant Branch of the Superior Court. On November 14, 2006, Ms. Redman filed an answer raising various defenses then potentially available to her. Two days later, on November 16, 2006, the amendment protecting disabled tenants became effective, and she raised this new defense in her opposition to Potomac's subsequent summary judgment motion. The trial court rejected all of Ms. Redman's arguments and granted judgment for possession in favor of Potomac.

Ms. Redman was eventually evicted on December 11, 2007.

## II.

The major issue before us in this appeal is whether Ms. Redman was protected from eviction as a "disabled tenant."[1] For many years, since the Rental Housing Conversion and Sale Act of 1980, District law has provided that an owner of a rental unit seeking to convert the unit "shall not evict or send notice to vacate to an elderly tenant" whose income falls below certain maximum limits. D.C. Law 3–86, § 208, 27 D.C.Reg. 2975 (Sept. 10, 1980); D.C.Code § 42–3402.08(a) (2001). For twenty-five years, with the exception of an adjustment in the income level, the provision remained largely unchanged. In 2006, however, the District of Columbia Council expanded the statute's coverage by making it apply to "an elderly or disabled tenant," as well as extensively modifying the provision in other respects. D.C. Law 16–179, "Low–Income Disabled Tenant Rental Conversion Protection Amendment Act of 2006," § 2(d), 53 D.C.Reg.

6698 (Nov. 16, 2006). This amendment became effective on November 16, 2006. *Id.* As further amended in 2007, the section now contains some significant additional provisions relating to the determination of persons subject to the prohibition against eviction. D.C.Code § 42–3402.08 (Supp.2007).

As the trial court noted in granting summary judgment for Potomac, several factors seriously complicate the application of D.C.Code § 42–3402.08 to Ms. Redman. First, the statute provides that "[a]n elderly or disabled tenant shall qualify under this subchapter if, on the day a tenant election is held for the purposes of conversion, the elderly or disabled tenant [meets the listed qualifications]." *Id.* § 42–3402.08(c)(1). The tenant election was held on November 28, 2005, roughly one year before the Council expanded the statute to cover disabled tenants. Second, the statute provides that those tenants who otherwise qualify as low-income elderly or disabled must waive their statutory protection in order to vote in the tenant election.[2] D.C.Code § 42–3402.03(d)(2) (Supp.2007)

---

**1.** Ms. Redman also claimed retaliatory eviction as a defense to Potomac's action for possession, and argued that the trial court should have granted a stay under our decision in *Drayton v. Poretsky Mgmt.,* 462 A.2d 1115 (D.C.1983), in light of the then ongoing administrative challenge to the conversion process that had been filed by another tenant, Janet Tribble. Ms. Redman's request for a *Drayton* stay is now moot as she has been evicted and this court has dismissed Ms. Tribble's administrative appeal. *Order, Tribble v. District of Columbia Dep't of Cons.& Reg. Affairs,* No. 06–AA–1124 (D.C. Mar. 4, 2008). As to Ms. Redman's defense of retaliatory eviction, the trial court properly granted summary judgment against her. The evidence before the trial court showed that Potomac initiated a conversion of the *entire* Property. After DCRA certified the election, Potomac offered tenants, including Ms. Redman, the opportunity to purchase their units, and properly informed tenants not entitled to a statuto-

ry tenancy under D.C.Code § 42–3402.08 that they would be required to vacate their units to permit the conversion process to proceed. Importantly, Potomac sought to recover possession of Ms. Redman's unit only *after* she chose neither to purchase nor vacate her unit. We agree with the trial court that the evidence before it was totally inadequate to support a finding of retaliatory eviction.

**2.** Prior law had prohibited qualifying elderly tenants from voting in the election. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, COMMITTEE REPORT ON BILL 16–724, "LOW-INCOME DISABLED TENANT RENTAL CONVERSION PROTECTION AMENDMENT ACT OF 2006," at 5–6 (June 15, 2006) [hereinafter COMMITTEE REPORT]. The amendment gave qualifying elderly and disabled tenants a choice to waive their right to remain as tenants under the statute in order to participate in the election. *Id.*

("An elderly or disabled tenant who delivers a waiver under § 42–3402.08(a)(2)(D) to the Mayor shall be qualified to vote in an election under this section."); § 42–3402.08(a)(2)(D). Ms. Redman voted in the election, but she did not waive her right to remain a tenant. Third, Ms. Redman has produced no evidence that she has received a determination by the Mayor, as required by the statute, much less that she sought such a determination at the time of the election. D.C.Code § 42–3402.08(c). The trial court highlighted these facts, and concluded that Ms. Redman had accordingly satisfied none of the preconditions necessary to invoke her protection from eviction under D.C.Code § 42–3402.08. Potomac also understandably emphasizes the importance of determining the status and number of low-income elderly and disabled persons who qualify for protection under the statute at the time of the tenant election, when financial plans are being solidified for the conversion process.

These grounds are not necessarily controlling[3] and we need not rely on them because we conclude that another statutory obstacle stands in Ms. Redman's way. The difficulties noted by the trial court, however, evidence the statutory complexity of the provision and its significant interrelation with the overall statutory scheme provided by the conversion statute. We view them as evidence that the Council did not intend the amendment to apply when events had progressed as far as they had in Ms. Redman's case.

Ms. Redman's argument is a straightforward one that relies on the literal language that an owner "shall not evict" an elderly or disabled tenant. When the amendment came into effect, she was still occupying the premises and had not been evicted. Hence, she says, the statute protects her.

Ms. Redman focuses on the meaning of "evict," but in reviewing the provision, attention must also be directed to the word "tenant." The statute defines a "tenant" as a "tenant, subtenant, lessee, sublessee, or other person *entitled* to the possession, occupancy or benefits of a rental unit within a housing accommodation." D.C.Code § 42–3401.03(17) (emphasis added); *see* D.C.Code § 42–3402.08(a)(2) (prohibiting owner from evicting or sending notice to vacate to a low-income elderly or disabled "tenant."). In other words, the statute protects from eviction low-income disabled tenants who at the time the amendment came into effect were also *lawful* tenants.[4]

Potomac served Ms. Redman with notice of its intent to convert the property on May 23, 2006. The notice specified that a tenant occupying his or her unit as a monthly tenant and/or tenant at sufferance would be required to vacate by September 30, 2006. Because the notice specified the date by which Ms. Redman was to vacate the property, the notice to convert also served as a statutory notice to vacate.

---

3. For example, it is difficult to fault Ms. Redman for not complying with statutory requirements that were not in existence at the time of the tenant election.

4. To be sure, Ms. Redman might make the argument that, at the time the tenant election was held, she was a lawful tenant and hence qualifies. Such an interpretation would indeed be a true retroactive application of the statute and would run contrary to the well-settled principle that retroactive applications of legislation are not to be presumed absent express legislative language or other clear implication that such retroactivity was intended. *Alpizar v. United States*, 595 A.2d 991, 993–94 (D.C.1991) (quoting *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964)). No evidence of such legislative intent has been evidenced here. The provision had remained unchanged for over twenty-five years and no emergency legislation was involved in its enactment.

D.C.Code § 42–1904.08(b) (2001) ("If the notice of conversion specifies a date by which the apartment unit shall be vacated, then such notice shall constitute and be the equivalent of valid statutory notice to vacate.").

Potomac's notice to vacate provided Ms. Redman 120–days notice of its intent to convert her unit, accurately described her option to purchase the unit, and otherwise complied with the provisions of the Rental Housing Conversion and Sale Act. D.C.Code § 42–1904.08(b)(3). Accordingly, Potomac was authorized under the District's rent-control laws to terminate Ms. Redman's tenancy.[5] When Ms. Redman failed to indicate her intent to purchase her unit, and having been served with a valid notice to vacate, her right to continue possession of the unit ended on September 30, 2006.

After September 30, 2006, Ms. Redman occupied the position of a tenant whose landlord had stated a statutorily sufficient reason to recover possession, who had received sufficient notice to vacate, but who refused to leave. As such, she was not "entitled" to continued possession of the unit. D.C.Code § 42–3401.03(17); see Hinton v. Sealander Brokerage Co., 917 A.2d 95, 108 (D.C.2007) (tenant who holds over following mutual termination of lease by landlord and tenant did not gain rights as a "statutory 'tenant by sufferance,'" but rather was a "'wrongdoer'"). The Council authorized owners converting rental units to condominiums to terminate the right of tenants to possess their units where they have complied with the Rental Housing Conversion and Sale Act, as Potomac has done. Therefore, by holding over beyond the September 30, 2006, deadline, Ms. Redman was no longer a lawful tenant.

While Potomac, by accepting rent from Ms. Redman and permitting her to stay in the unit, could no doubt have elected to treat her as a tenant-at-will or monthly tenant, it did not do so.[6] See 5 Thompson on Real Property § 40.10, at 79 (2d ed. 2007). Potomac instead filed an action for possession, making clear its intent to treat Ms. Redman as an unlawful holdover tenant, a status akin to the common law tenant at sufferance.[7] See D.C.Code § 42–

---

5. The District's rent control legislation imposes significant limitations on a landlord's ability to evict a tenant. The landlord must state a statutorily sufficient reason to proceed with an eviction. Cormier v. McRae, 609 A.2d 676, 678–79 (D.C.1992); Habib v. Thurston, 517 A.2d 1, 5 n. 3 (D.C.1985) (rent control laws create residential tenancies terminable "only on the occurrence of an event specified by statute"). The rent control legislation provides that an owner who seeks to "convert the rental unit or housing accommodation to a condominium or cooperative" must serve notice to vacate in conformity with D.C.Code § 42–3402.06(c). D.C.Code § 42–3505.01(j) (Supp.2007). Thus, where the owner serves a valid statutory notice to vacate, D.C.Code § 42–3505.01 imposes no bar to the landlord recovering possession of a unit as part of a valid condominium conversion. It could not be otherwise. The condominium-conversion laws would be a nullity if the unit's owner could not terminate his or her renter's tenancy and prepare the unit for sale.

6. Potomac represented to the trial court in its Supplemental Memorandum of Law Regarding Retroactive Applicability of D.C.Code § 42–3402.08, that it had refused to accept Ms. Redman's rent payments after September 30, 2006, so as not to be viewed as having elected to hold her to a new tenancy.

7. The common law termed a tenant who held over beyond the term of the lease a "tenant by sufferance." See Hampton v. Mott Motors, Inc., 32 A.2d 247, 248 (D.C.1943). It does not follow, however, that the tenant was less of a wrongdoer. Hinton, supra, 917 A.2d at 108. This was especially the case after the landlord exercised the option to evict the tenant, rather than accepting his "offer" for a renewed term. Here, as noted, the landlord had made its decision to evict. At common

3210 (authorizing landlord to bring action to eject tenant who refuses to surrender possession of leased premises); *Hinton, supra,* 917 A.2d at 108. The consequence of Ms. Redman's holding over, and of Potomac's suit for possession, was that Ms. Redman possessed her unit without right, and not as a tenant at all.[8] *Id.* at 109 (tenant holding over after termination of lease "has no claim to any kind of tenancy"); *Hampton, supra* note 7, 32 A.2d at 248 (tenant at sufferance at common law "had no estate in the premises"); *Eubanks v. First Mt. Vernon Indus. Loan Ass'n, Inc.,* 125 Md.App. 642, 726 A.2d 837, 851 (Ct.Spec.App.1999) ("By definition, a holdover tenant is not a tenant at the time he or she is holding over, because the tenancy has necessarily ended." (citing *West v. Humble Oil,* 261 Md. 190, 274 A.2d 82 (1971))); 4 Thompson, *supra,* § 39.05, at 587 (describing landlord tenant relationship where tenant wrongfully holds over as an *"occupancy* at sufferance rather than as a tenancy at sufferance") (emphasis in original). Thus, Ms. Redman's right to the

"possession, occupancy or benefits" of her rental unit had ended. D.C.Code § 42–3401.03(17) (defining "tenant" under Rental Housing Conversion and Sale Act).

We are satisfied that as of November 16, 2006, when the amendment protecting disabled tenants took effect, Ms. Redman was not then a "tenant" subject to the prohibition on eviction within the meaning of the statute.[9] Thus, even if Ms. Redman had not yet been "evicted" within the meaning of the statute by that date, an issue we do not decide, we conclude that the statute did not prevent Potomac from seeking and obtaining possession of her unit.[10] Accordingly, the judgment of the trial court is

*Affirmed.*

---

law, he could have used self-help but was prevented from doing so in the District because of our case law. *Id.* at 102 (citing *Mendes v. Johnson,* 389 A.2d 781, 783–87 (D.C.1978) (en banc) (noting that landlord's common-law right to self-help replaced by mandatory legal process), *abrogated in part by Davis v. Moore,* 772 A.2d 204 (D.C.2001) (en banc)).

**8.** We have said, of course, that a tenant who holds over after the termination of her lease may be a wrongdoer, but she is not without rights. *Hinton, supra,* 917 A.2d at 108 (citing Restatement (Second) of Property: Landlord and Tenant § 14.7). But Ms. Redman's rights after October 5, 2006, did not entitle her to remain as a tenant after Potomac had sought to recover possession of the unit.

**9.** While Ms. Redman did raise a number of defenses to the eviction action, none of them was found tenable and the only defense asserted on appeal, that of retaliatory eviction, we have found to be meritless. See *supra* note 1. Had Ms. Redman prevailed on any of

her defenses, our analysis, of course, would not apply.

**10.** We find support for our conclusion that the Council did not intend the statute to apply to someone in Ms. Redman's position when we consider that she effectively asks this court to place her in a better position than the amendment calls for. The first amendment and its legislative history make clear that the Council intended to give "the low-income elderly and low-income disabled" the ability to "make their own individual decisions in a conversion election" and vote in such an election where they "waive their right to remain a tenant." Committee Report. *supra* note 2, at 5–6; D.C.Code § 42–3402.03(d) (Supp.2007). Having voted against the conversion in the election, Ms. Redman now also seeks to benefit from the statutory tenancy for low-income disabled tenants. Such a result appears at odds with the statutory framework the Council chose for protecting disabled tenants.