# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 13, 2012            Decided June 7, 2013

No. 11-7116

AUDRICK PAYNE,
APPELLANT

v.

DISTRICT OF COLUMBIA GOVERNMENT, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00163)

*David A. Branch* argued the cause and filed the briefs for appellant.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees.  With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

Opinion filed by *Circuit Judge* ROGERS concurring in part and concurring in the judgment.

SENTELLE, *Senior Circuit Judge*: Audrick Payne, who was discharged from his position as an elevator inspector for the District of Columbia Department of Consumer and Regulatory Affairs, sued the District and four supervisory employees for violation of the District of Columbia Whistleblower Protection Act ("DCWPA"), along with several other theories of liability. The district court granted judgment in favor of the defendants on all claims. Appellant now seeks reversal of the district court judgment as to the whistleblower claims. Because we agree with the district court that the relevant statute provided no cause of action against individuals, and that an amendment so providing was not retroactive, and further agree that Payne has not established causation between his allegedly protected activity and his discharge, we affirm the judgment of the district court.

## Background

*A. Factual Background*

The published opinion of the district court sets forth the background facts of this litigation in some detail. *See Payne v. District of Columbia*, 741 F. Supp. 2d 196 (D.D.C. 2010); *see also Payne v. District of Columbia*, 808 F. Supp. 2d 164 (D.D.C. 2011) (denying plaintiff's motion to amend judgment); *Payne v. District of Columbia*, 592 F. Supp. 2d 29 (D.D.C. 2008) (dismissing other claims in the original complaint). Therefore, we will not exhaustively revisit that history, but rather will set forth only sufficient factual background for clarity of analysis.

The District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") hired appellant as an elevator

inspector in September of 2001. From the beginning of his tenure, Payne observed that the frequency and quality of inspections was not, at least in his opinion, up to the standards required for either safety or regularity. Indeed, in his filings in the district court and before us, Payne produces instances of serious and even tragic accidents allegedly attributable to the deficient inspections he decried for years.

Among the options available to an inspector who has found a violation is "tak[ing] an elevator out of service." Payne shut down "considerably more" elevators than other inspectors. By Payne's own account, his supervisors overruled him and put elevators back in service with a frequency that he described as "all the time." This apparently was typical of Payne's relationship with higher-ups in the Department. For example, in his 2003–04 performance evaluation, the rating official commended his good intention but noted a "tend[ency] to be regid [sic]." In his 2005–06 evaluation, the rater referred to his need "to minimize actions that may be seen as being overzealous instead of thorough." And as noted, his superiors overruled him at times when he took elevators out of service and also reprimanded him for issuing what they saw as overly large fines.

Payne was particularly disturbed by what he saw as deficiencies and conflicts in a third-party inspection program in which the Department outsourced some inspection duties to private contractors. Specifically, Payne noted that a former Department inspector operating a private consulting business which was registered as a third-party inspector had improperly allowed the installation of elevators to commence at a large apartment complex before the issuance of permits. Payne issued a stop work order and $21,000 fine. Thereafter, his superiors overruled him and allowed the third-party inspector to complete the inspection of the construction. A little over a week later, an elevator user fell to her death due to a faulty elevator. Payne

spoke to the *Washington Post* about this incident and specifically the fact that the inspections were conducted by a third-party inspector whom he named. Although Payne emphasizes this incident in his filings, the record does not reflect whether the Department was aware that Payne had spoken to the *Washington Post*.

More germane to the issues before us, in February 2005, Payne gave testimony before a committee of the Council of the District of Columbia on "the state of elevators in the District of Columbia." In his testimony, he attributed the death of a firefighter to an outdated alarm system and testified more generally that the District was not devoting adequate resources to inspection of elevators.

On March 1, 2006, a local television news program, Fox 5 News, telecast a feature on "dangerous elevators." In its coverage it referred to "repeated failures in the District's elevator inspection process." Documents bearing Payne's handwriting and signature appeared in the telecast. Soon after the story ran, the Acting Director of the DCRA called a meeting to discuss the Fox 5 story and a Department administrator told Payne that when he saw this story, he knew that Payne was involved.

In March 2006, Payne once more testified before the District Council committee on the subject of elevator safety. He testified that conditions were worse than they had been at the time of his prior appearance. In his deposition in the district court proceedings, Payne testified that his supervisor was very upset that his name had been brought up "a number of times" in Payne's testimony before the committee, but Payne did not offer any evidence to support his statement about the supervisor's anger.

While the above events were unfolding, in addition to performing his duties as an employee of the Department, Payne also headed a private commercial business, Payne and Associates, Inc. ("P.A.I."), engaged in the elevator inspection business. *See Payne v. District of Columbia*, 741 F. Supp. 2d at 204. The Department received complaints from the Apartment and Office Building Association that Payne was soliciting elevator inspection work for his private commercial business while he was on official duty for the District of Columbia. According to the Vice President of the Association, Payne "approached several AOBA members, identified himself as a DCRA elevator inspector, and solicited work for" P.A.I., while officially on duty. The AOBA official alleged that Association members were afraid that Payne would retaliate against them by shutting down their elevators if they did not do business with him. In August 2005, the Department referred the matter for investigation to the District of Columbia Office of Inspector General ("OIG").

The OIG undertook the requested investigation, which continued for more than a year. Six witnesses contacted by the OIG confirmed that Payne had attempted to solicit work for his private business while conducting inspections for the District of Columbia. Four witnesses reported that they had personally observed such solicitations. One of them, Mark Dorsey, an elevator consultant for EMCOR Facilities Services, a facility management company providing maintenance and consulting services for various buildings, reported that Payne had "often solicited personal business as a third-party inspector" from Dorsey while Payne was performing inspections for the DCRA. Dorsey corroborated his statements by producing a "Payne and Associates" business card, which he stated that he had received from Payne. This witness also reported that he had witnessed Payne soliciting personal business from an elevator company while performing DCRA inspections.

A project officer and superintendent for Archstone Smith, a company operating apartment communities in Washington, DC, and other cities, Eric Holst and Tim Pagano, also provided information concerning Payne's solicitation of private business. According to the Archstone Smith officials, Payne distributed his P.A.I. business cards while conducting a reinspection of an elevator as a DCRA inspector. They related that Payne discussed several code violations with them. When they advised Payne that they intended to use a third-party inspector to correct the violations, he "stated that he would not allow a [third-party] inspector to conduct the re-inspection because the elevator had not been inspected since 1996." Payne displayed both his DCRA and P.A.I. business cards and advised that he had a third-party consulting and inspection business. Payne later returned to conduct a second inspection at the Archstone Smith property and "again distributed his business cards."

Stephen Weaver, a former DCRA employee and himself a third-party inspector, reported that "on at least two occasions, while conducting inspections for DCRA," Payne had attempted to solicit work as a third-party inspector and provided Weaver with his P.A.I. business card. Two other witnesses who did not provide first-hand evidence of Payne's solicitation provided hearsay to the effect that other members of the business community had told them of similar conduct by Payne. One stated that Payne had "solicited several elevator mechanics" under contract to her company for his business.

On April 14, 2006, the OIG interviewed Payne himself. Payne acknowledged that he had established Payne and Associates in 1998, but had not actually begun doing business until October of 2005. He stated that the only business he conducted on behalf of his private company was while he was on annual leave and was outside of the District of Columbia. He further claimed that he had never solicited personal business

while on government duty and denied having provided anyone with his personal business card except upon request. However, he did not offer any explanation for the three business cards that OIG had obtained from the contractors and building managers who had alleged his abuse of authority. The Office of the Inspector General issued its final report on the Payne investigation on November 3, 2006, concluding "that Payne had solicited work for his personal business as a third-party inspector while on duty in violation of D.C. Code § 1–618.02." *Payne v. District of Columbia*, 741 F. Supp. 2d at 196, 204.

While the investigation was unfolding, on September 13, 2006, the Department issued a memorandum to all elevator inspectors stating, "Before sealing an elevator out of service, you must contact your supervisor for approval." The memorandum also listed four other officials to call in the event that the supervisor could not be contacted. The memorandum only permitted sealing without prior notice to the higher officials in the event of "imminent danger." On October 16, 2006, the Department issued a notice of suspension to Payne alleging that on September 27, 2006 and September 28, 2006, he had taken elevators out of service without notice to his supervisor or the other officials. In his deposition for this proceeding, Payne admitted to having taken elevators out of service without calling.

On November 3, 2006, while the proposal to suspend Payne for violating the elevator sealing policy was pending, the Inspector General issued the final report finding that Payne had violated District ethics laws and recommending that the Department "take appropriate action." The Director of the Department issued a letter to Payne noticing his summary termination on November 9, 2006, citing the ethical and legal violations set forth in the report of the Inspector General.

After his termination, Payne pursued a course of administrative review and mediation described in the district court's opinion. *See Payne v. District of Columbia*, 741 F. Supp. 2d at 205. In the end, Linda Argo, Acting Director of the Department, rejected Payne's final appeal and ordered his termination on September 17, 2007.

On January 28, 2008, Payne filed action against the District of Columbia and four individual officials of the District of Columbia Department of Consumer and Regulatory Affairs: Linda Argo, Patrick Canavan, Lisa Morgan, and Nicholas Majett. In his original complaint, Payne set out nine counts alleging various theories of liability. In an amended complaint filed May 9, 2008, he re-alleged nine counts against the same government and individual defendants. On December 30, 2008, the district court granted defendants' motion to dismiss Counts VI through IX for reasons not material to the present appeal. *Payne v. District of Columbia*, 592 F. Supp. 2d 29 (D.D.C. 2008).

The litigation continued in district court with respect to Counts I through V, alleging claims against the District of Columbia and the four individuals. Count I alleged a claim based on the District of Columbia Whistleblowers Protection Act. Count II alleged a violation of the First Amendment of the United States Constitution. Counts III through V alleged other constitutional and civil rights violations, which are no longer raised in this litigation. On September 29, 2010, the district court considered and granted the defendants' motions for judgment on the pleadings and for summary judgment as to Counts I through V of the complaint. Thereafter, Payne timely filed notice of appeal. Payne raises no issue in this appeal with respect to the judgment in favor of defendants on Counts III through V.

9

*B. Statutory Background*

Although Payne is appealing from summary judgment entered on both the District of Columbia statutory theory and the First Amendment theory, the principal thrust of his appeal is directed toward the District of Columbia Whistleblower Protection Act. That Act, as in effect at the time of Payne's employment, provided:

> A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.

D.C. Code § 1–615.53 (2001). The statute defined "protected disclosure" as:

> any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
> (A) Gross mismanagement;
> (B) Gross misuse or waste of public resources or funds;
> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1–615.52(a)(6). The term "public body" as used in § 615.52(a)(6) includes the DC City Council. *Id.* § 1–615.52(a)(7)(A).

Payne contended in the district court and contends before us that his termination was in retaliation for his disclosure before the City Council of gross mismanagement and misuse or waste of public resources by the DCRA.  The district court ruled that Payne's whistleblower claims could not survive the summary judgment motion and entered judgment in favor of the defendants.  We agree and affirm the judgment of the district court.

## II.  Analysis

We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences from the evidence in favor of the nonmoving party.  *See, e.g.*, *John C. Flood of Va., Inc. v. John C. Flood, Inc.*, 642 F.3d 1105, 1109 (D.C. Cir. 2011).  Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In this case, we determine that the district court correctly granted summary judgment and that the defendants were entitled to judgment as a matter of law.

*A.  The Individual Defendants*

We will first consider the grant of summary judgment dismissing the case against the individual defendants because it is sustainable on a ground not applicable to the judgment in favor of the District.  The DCWPA provides:

(a) An employee aggrieved by a violation of § 1–615.53 may bring a civil action before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages, including but not limited to injunction, reinstatement to the same position held before the

> prohibited personnel action or to an equivalent position, and reinstatement of the employee's seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages, and reasonable costs and attorney fees . . . . A civil action brought pursuant to this section shall comply with the notice requirements of § 12–309.

D.C. Code § 1–615.54(a) (2001). As the district court noted, this section does not explicitly state against whom an action under the DCWPA may be brought. Nonetheless, upon examination, we conclude, as did the district court, that the DCWPA in effect at the time of Payne's bringing of his lawsuit "does not provide a cause of action against individual" supervising employees. *Payne v. District of Columbia*, 741 F. Supp. 2d at 211.

As the district court observed, "the overall context of the statute strongly suggests that this provision was intended only to authorize suits against the District of Columbia." *Id.* at 210. The forms of relief set forth in the statute—injunction, reinstatement, restitution of benefits, and backpay—could be recovered only against the employer District of Columbia, not against the individual supervisors. Further, the statute "requires compliance with" a notice of claim statute, D.C. Code § 12–309, governing only the bringing of actions "against the District of Columbia." *Id.* As the notice provision in the DCWPA does not separately specify application to actions against the District and its agencies, it is reasonable to conclude, as did the district court, that the statute contemplated no other actions than those.

Further, the statute as then in effect

> place[d] the burden of proof "on the employing District agency to prove by clear and convincing evidence that the alleged action would have occurred for legitimate,

independent reasons even if the employee had not engaged in activities protected by this section."

*Payne v. District of Columbia*, 741 F. Supp. 2d at 210 (quoting D.C. Code § 1–615.54(b)).  We agree with the district court's reasoning that this explicit placement of the burden on "the employing District agency" evidences that the DCWPA in effect at the time did "not contemplate that individual supervisors could be named as defendants."  *Id.*

On appeal, Payne wisely does not argue that the statute in effect at the time of the events under litigation created a cause of action against individual defendants.  Rather, he relies on an amendment to the statute passed in 2009, which provided that:

An employee aggrieved by a violation of § 1–615.53 may bring a civil action against the District, and, in his or her personal capacity, any District employee, supervisor, or official having personal involvement in the prohibited personnel action . . . .

Whistleblower Protection Amendments Act of 2009, § 2(c), D.C. Code § 1–615.54(a)(1) (2010).  Had that amendment been in effect at the time of Payne's allegedly retaliatory discharge, he might have stated a claim for relief against the individuals.  Unfortunately for Payne, it was not in effect.  Therefore, Payne has no claim against the individuals unless the amendment is retroactive.  Again unfortunately for Payne, it is not.

Under District of Columbia law:

As a general rule, statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect.

*Wolf v. D.C. Rental Accommodations Comm'n,* 414 A.2d 878, 880 n.8 (D.C. 1980); *see also Payne v. District of Columbia*, 741 F. Supp. 2d at 211. Otherwise put: "[R]etroactive applications of legislation are not to be presumed absent express legislative language or other clear implication that such retroactivity was intended." *Redman v. Potomac Place Assocs., LLC*, 972 A.2d 316, 319 n.4 (D.C. 2009).

Not only is there no express legislative language or other clear implication that retroactivity was intended, but also nothing about the amendment suggests other than the normal prospective application presumed for legislative acts. Payne valiantly argues to the contrary, but his argument is unavailing. He relies upon the proposition that "[u]nless a contrary legislative intent appears, . . . changes in statutory law applying only to procedure apply to pending cases." Appellant's Brief at 24 (citing *Montgomery v. District of Columbia*, 598 A.2d 162, 166 (D.C. 1991) (quoting 2 N. Singer, Sutherland Statutory Construction § 41.09, at 396 (1986))). While we do not reject that as a basic proposition, it simply has nothing to do with this case. Payne argues that we must construe section 2(c) as procedural because the D.C. Council's committee report on the 2009 Act discussed that section 2(c) under a heading entitled "Procedural barriers to recovery." But the committee report cannot bear the weight Payne places on it. The discussion of section 2(c) comes at the very end of the section and contains no indication, other than the heading, that the legislature even considered whether the change was substantive or procedural.

We have previously discussed the difference in substantive and procedural statutory changes with specific reference to retroactivity in *LaFontant v. INS*, 135 F.3d 158 (D.C. Cir. 1998). In that case, we offered by way of example that "a statute is merely procedural in a strict sense" if it affects "say, setting deadlines for filing and disposition." *Id.* at 162 (quoting *Lindh*

*v. Murphy*, 521 U.S. 320, 327 (1997)) (internal quotation marks omitted). On the other hand, a "revision[] of prior law to change standards of proof and persuasion in a way favorable" to one party over the other goes "beyond 'mere' procedure to affect substantive entitlement to relief." *Id.* (quoting *Lindh* at 327). The amendment at issue before us goes far beyond the amendments discussed in *LaFontant* and *Lindh*. This amendment does not just *affect* substantive entitlement to relief, it creates such an entitlement. The creation of a new cause of action is hardly a procedural amendment. It is difficult to conceive of anything more substantive. In light of that fact, the committee report nowise constitutes the sort of "clear legislative showing" required for a substantive amendment to be given retroactive effect. *Wolf*, 414 A.2d at 880 n.8; *cf. Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947) ("[T]he heading of a section cannot limit the plain meaning of the text"). Therefore, the generality cited by Payne is irrelevant. The district court rightly ruled that the statute had no retroactive application. We affirm the summary judgment granted by the district court.

## B. Claims Against the District

We agree with the district court that while Payne may have pleaded a cause of action against the District under the DCWPA, the evidence before the court at summary judgment did not make out a *prima facie* case, and that therefore, there being no genuine dispute of material fact, the district court properly granted summary judgment in favor of the defendants. In order to recover under the terms of the Act, the plaintiff must first establish that he has made a "protected disclosure." A protected disclosure includes one made to "a public body" evidencing types of mismanagement, waste, and abuse as set forth in the Act. D.C. Code § 1–615.52(a)(6). It is not seriously disputed that Payne has made out those elements of his claim for relief.

But that is not the end of the requirements.

To make out a claim under the Act, plaintiff's evidence must also support a retaliatory element. That is, he must show that a supervisor has "take[n], or threaten[ed] to take, a prohibited personnel action or otherwise retaliate[d] against an employee *because* of the employee's protected disclosure." D.C. Code § 1–615.53 (emphasis added).

In analyzing the claim, as we are applying substantive law of the District of Columbia, "[o]ur duty . . . is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered the case." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042–43 (D.C. Cir. 2010). Thus, as in *Shaw*, our analysis of the applicable District of Columbia statutes recognizes the District of Columbia Court of Appeals's interpretation as binding. *See id.* at 1043.

In conducting the analysis of the *prima facie* case under the DCWPA, we must use the burden-shifting framework established by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Crawford v. District of Columbia*, 891 A.2d 216, 221 (D.C. 2006); *Johnson v. District of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007). In order to make out a *prima facie* case at the summary judgment stage in a whistleblower case, a plaintiff is required to produce evidence of retaliation sufficient for a reasonable jury to conclude "that his protected activity was a contributing factor in the alleged prohibited personnel action." *Payne v. District of Columbia*, 741 F. Supp. 2d at 213. While the establishment of a *prima facie* case would shift the burden of proof to the defendant employer, Payne has not established his *prima facie* case of a causal connection between his disclosures to the Council and the action terminating his employment and, therefore, the burden has not shifted. While the District has provided substantial evidence of

its reasons for terminating Payne, independent of his disclosures, we need not look to those reasons as Payne has not made it past the *prima facie* hurdle.

As the district court aptly declared, Payne "has produced no direct evidence that DCRA's decisions were motivated by Payne's testimony." *Id.* Of course this is unsurprising, and it is indeed common that causation elements dependent upon the intent of an actor would be proven by circumstantial rather than direct evidence. Payne's difficulty is that he has produced no circumstantial evidence of causation either. Payne's proffered evidentiary theory is that the "temporal proximity" between the protected disclosure and the termination is circumstantial evidence of causation. While it is true that "temporal proximity" can provide circumstantial evidence of causation, there is no temporal proximity in the evidence in this case.

The gap between the protected activity and the alleged retaliation is approximately eight months. The district court rightly rejected this theory. As the district court noted, in *Johnson v. District of Columbia*, 935 A.2d at 1120, the DC Court of Appeals rejected a "four-month lapse of time as proof of a causal connection between the protected disclosures and the adverse actions." We conclude that the district court's decision correctly follows District of Columbia precedent. Once the time between a protected disclosure and a negative employment action has stretched to two-thirds of a year, there is no "temporal proximity" that supports a causal connection between the two, nothing else appearing. Here, nothing else pertinent appears. All Payne really offers is evidence that he made a protected disclosure and that at a later time he suffered a termination. The fact that one event precedes another does not in itself evidence causation.

*C. The First Amendment Claim*

Although Payne's complaint asserted a claim under the First Amendment, we cannot find error in the district court's grant of summary judgment, as Payne has forfeited any such claim on appeal. We have long held that this court does not normally consider "points not asserted with sufficient precision to indicate distinctly the party's thesis." *Miller v. Avirom*, 384 F.2d 319, 321–22 (D.C. Cir. 1967). Payne has not asserted his First Amendment claim before us.

In his principal brief, there are three references to the First Amendment. The first reference, however, is not in the argument section of the brief at all, but only in his statement of issues and even there, the reference is subsumed in a single sentence describing his claims in the district court. *See* Appellant's Brief at 1. Similarly, the second reference is not part of his argument either, but is only an inclusion of the First Amendment in a list of "statutes" set forth at the beginning of his brief. *See id.* at 10.

Only the third reference to the First Amendment is even contained in the argument portion of his brief, and that reference is not actually part of the argument, but only of a heading reading, "The District Court erred in finding Payne failed to establish a *prima facie* case of retaliation under the DCWPA or the First Amendment." *Id.* at 26. There is no development by Payne of his alleged First Amendment claims, and thus, we must conclude that he has forfeited them. In so concluding, we note that when appellee raised this forfeiture in its responding brief, Payne's reply brief takes issues with the proposition, but still can cite no reference to his original brief that develops the theory as it must to warrant our consideration.

## Conclusion

For the reasons set forth above, we affirm the district court's grant of summary judgment.

ROGERS, *Circuit Judge*, concurring in part and concurring in the judgment. On appeal, Audrick Payne contends that the district court erred in granting judgment on his claims against four individual District government employees because an amendment enacted in 2009 to the D.C. Whistleblower Protection Act, D.C. Code § 1-615.54(a) (2001), was retroactive. *See* Appellant's Br. 25-26. As the court acknowledges, Op. at 12, Payne does not argue on appeal that the statute, prior to the 2009 amendment, authorized claims against individual employees. *See* Appellant's Br. at 24. He has therefore waived any such claim. *See Evans v. Sebelius*, No. 11-5120, 2013 WL 2122072, at \*3 (D.C. Cir. May 17, 2013) (citing *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 1-098 n.4 (D.C. Cir. 2003)); *New York v. EPA*, 413 F.3d 3, 20 (D.C. Cir. 2005). Consequently, this court has no occasion to decide whether D.C. Code § 1-615.54(a), prior to the 2009 amendment, allowed suits against individual District government employees, and the court's discussion of this question of District of Columbia law, Op. at 11-12, is *dictum*, which this court has long recognized is of no precedential value, *see Gersman v. Grp. Health Ass'n, Inc*., 975 F.2d 886, 897 (D.C. Cir. 1992); *Noel v. Olds*, 138 F.2d 581, 586 (D.C. Cir. 1943); *cf. Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1427 (D.C. Cir. 1986).

Otherwise, I concur in holding that, under District of Columbia, law, the 2009 amendment to D.C. Code § 1-615.54(a) (2001) is not retroactive in the absence of some clear indication that the Council of the District of Columbia intended the amendment to operate retroactively. *See* Op. at 13. I also concur in affirming the grant of summary judgment on Payne's claims against the District of Columbia. *See id.* at 14-18.