*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0473

LaSHAWN LANE, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, RESPONDENT,

and

SHEILA VAUGHAN, *et al.*, INTERVENORS.

On Petition for Review of an Order of the
District Of Columbia Department of Housing and Community Development
(DR 2023-0200)

(Submitted April 17, 2024                    Decided August 22, 2024)

*Andrew P. McGuire* was on the briefs for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Graham E. Phillips*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a Statement in Lieu of Brief in support of intervenors.

*Brian W. Thompson* and *Selena A. Motley* were on the brief for intervenors.

Before EASTERLY and DEAHL, *Associate Judges*, and THOMPSON, *Senior Judge*.

DEAHL, *Associate Judge*: This case concerns the District's Tenant Opportunity to Purchase Act, or TOPA, which affords tenants certain rights before the owner of a rental property can sell or otherwise convert it. One of the more potent rights in TOPA as originally enacted is that it gave tenants an option to match any "bona fide offer of sale," and further, the right to assign that option to a third-party. The D.C. Council changed that in 2018, when it amended TOPA so that the Act no longer applied to single-family dwellings. While landlords of such dwellings still must notify tenants of their intent to sell, the tenants no longer have the right to match a bona fide offer of sale, except in those cases where the tenants are elderly or disabled and had moved into the home before April 15, 2018.

Sheila Vaughan and Derrick Fogg own a single-family home at 3313 Cornwell Drive in Southeast D.C. LaShawn Lane became their tenant in 2010. Upon deciding to sell their home in 2023, Vaughan and Fogg provided Lane with the standard notice of sale informing Lane of their intent to sell and that she had certain rights under TOPA if she qualified as elderly or disabled. Lane filed a petition with the Department of Community and Housing Development challenging the validity of the notice she received, asserting that TOPA's 2018 amendments did not apply to her because her tenancy began in 2010, so she was entitled to the broader TOPA protections afforded tenants pre-amendments. The Department rejected her petition, and Lane now petitions this court for review. We affirm.

## I. Factual Background

We provide a brief overview of TOPA before turning to the facts of this case. TOPA, as originally enacted, required any owner of a rental accommodation that wished to sell the property to give their tenants the first opportunity to purchase the property "at a price and terms that represent a bona fide offer of sale." D.C. Code § 42-3404.02(a). That meant, essentially, that the tenant was allowed to accept the seller's proposed terms of sale, or that they could match the terms of a third-party offer that the seller had agreed to accept. *Id.* § 42-3404.02(a-2)(1)(B). TOPA also permitted tenants to assign these rights to third parties. D.C. Code § 42-3404.06.

The D.C. Council amended TOPA significantly in 2018 when it largely exempted single-family accommodations from TOPA's requirements. *See* TOPA Single-Family Home Exemption Amendment Act of 2018, D.C. Law 22-120, § 409, 65 D.C. Reg. 5077 (2018). Under the amended Act, owners of single-family accommodations who intend to sell their property need only provide tenants with notice of sale within three days of receiving or soliciting an offer, but that notice no longer triggers a tenant's right to purchase. D.C. Code § 42-3404.09(b). Importantly, these 2018 amendments partially grandfathered in a limited set of tenants—tenants who are over 62 years old or disabled, provided they signed their lease by March 31, 2018, and moved in by April 15, 2018. D.C. Code

§§ 42-3401.03(9A), -3404.09(c)(1). Tenants who fit within that carve-out have twenty days to express an interest in purchasing the property and to claim elderly or disabled status; they must also submit documentation to the Department of Housing to verify that they fit within this carve-out. D.C. Code § 42-3404.09(c)(3), (d). But even the elderly and disabled who are grandfathered in do not retain their full set of TOPA rights: They may no longer freely assign those rights, as the only consideration they can receive for selling their limited TOPA rights is the "right to immediately use and occupy the tenant's unit for a period of 12 months following the sale . . . at the rate of rent charged as of the date of the offer . . ." D.C. Code § 42-3404.09(c)(6).

Lane began renting a single-family home from Vaughan and Fogg in 2010. Upon deciding to sell the property in early 2023, the pair provided Lane with notice of sale. The form instructed Lane that she had twenty days (1) to respond to the owners if she was interested in purchasing and could claim elderly or disability status, and (2) to provide documentation verifying her claimed status to the Department of Housing.

Lane did not respond to the notice of sale and instead filed a petition with the Department of Housing seeking a declaratory order that her TOPA rights were determined by the law as it existed when her tenancy began in 2010. She argued

that the 2018 amendments did not apply to tenants of single-family housing who had resided in their properties before the 2018 amendments were enacted. In Lane's view, she was entitled to the far broader "protections and privileges of the pre-amendment TOPA," and Vaughan and Fogg had violated those broader rights. The Department of Housing rejected Lane's petition, concluding that Vaughan and Fogg satisfied TOPA's requirements because they complied with the Act as amended in 2018. Lane now petitions this court for review.

## II. Analysis

Lane asserts that TOPA's 2018 amendments do not operate retroactively to divest long-term tenants of their rights, but instead generally only affected tenancies that began after the 2018 amendments were enacted. Because Lane became a tenant in 2010, she argues that she has the same rights to purchase the property that TOPA granted her before the 2018 amendments. Lane thus asserts that Vaughan and Fogg deprived her of her TOPA rights because they complied with only the limited notice requirements under the 2018 amendments, but not the broader rights to which she asserts she was entitled under the pre-amendment Act. Lane asks us to vacate the Department of Housing's contrary ruling and direct Vaughan and Fogg to comply with TOPA as it existed when her tenancy began (there is no dispute that they have not done that).

We interpret TOPA's provisions de novo.  *Holmes v. D.C. Dep't of Hous. & Cmty. Dev.*, 231 A.3d 416, 423 (D.C. 2020).  For the sake of this petition for review, we will assume that we owe no deference to the Department of Housing's interpretation of the Act.[1]

It is a "well-settled principle that retroactive applications of legislation are not to be presumed absent express legislative language or other clear implication that such retroactivity was intended." *Redman v. Potomac Place Assocs., LLC*, 972 A.2d 316, 319 n.4 (D.C. 2009); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (noting that "the presumption against retroactive legislation is deeply rooted" in American jurisprudence.).  It is not at all clear to us that applying TOPA's 2018 amendments to a 2023 sale actually implicates this presumption against retroactivity (though those 2018 amendments certainly altered Lane's rights as a tenant).  As the Supreme Court has explained:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law.  Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. . . . Any test of retroactivity will leave room for disagreement in hard

---

[1] The Supreme Court recently cast some doubt on our longstanding precedent calling for deference to an agency's reasonable interpretation of a statute that it administers in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).  Because we agree with the Department of Housing's interpretation of TOPA even without giving any deference to it, we bypass this issue here.

> cases, and is unlikely to classify the enormous variety of
> legal changes with perfect philosophical clarity.

*Landgraf*, 511 U.S. at 269-70 (internal citation and footnote omitted). Here, it is not obvious that Lane is claiming anything more than that her "expectations based in prior law" were disrupted by the 2018 amendments to TOPA, and *Landgraf* instructs that this alone does not amount to a retroactive application of a statute. *Id.*; *see also id.* at 284-85, nn.36-37 (discussing how the presumption against retroactivity often does not apply to "remedial statutes" and "procedural" ones).

Still, neither the respondent nor the intervenors seem to directly contest that a presumption against retroactivity applies here, so we will assume for the sake of argument that the presumption applies. Even assuming that, any presumption has been clearly rebutted by the plain text of the 2018 amendments. The presumption against retroactivity is rebutted when the legislature's "clear intent" was to override it. *Id.* at 272; *Apartment & Off. Bldg. Ass'n of Metro. Wash. v. Pub. Serv. Comm'n*, 129 A.3d 925, 932 (D.C. 2016) ("[T]he plain language and legislative history of the amendment would suffice to rebut any applicable presumption against retroactivity."); *accord Holzsager v. D.C. Alcoholic Beverage Control Bd.*, 979 A.2d 52, 56-57 (D.C. 2009).

The text of the 2018 amendments make it crystal clear that the Council intended the new single-family accommodation exemption to apply to tenants, like Lane, whose tenancies preceded the 2018 amendments in all but the limited subset of cases where the tenant is elderly or disabled. Section 42-3404.09(c) provides that the elderly and disabled are partially grandfathered into the revised TOPA regime provided they "took occupancy by April 15, 2018," in which case they retain some of the TOPA rights that were otherwise abrogated by the 2018 amendments. That limited allowance for the elderly and disabled is to the plain exclusion of everybody else, i.e., the 2018 amendments apply fully to those like Lane who do not claim to be elderly or disabled. *McCray v. McGee*, 504 A.2d 1128, 1130 (D.C. 1986) (acknowledging the "basic rule of statutory interpretation" that "when a legislature makes express mention of one thing, the exclusion of others is implied."). To accept Lane's view that the 2018 amendments do not apply to any tenants who moved in before the 2018 amendments would not only render those grandfathering provisions superfluous, contrary to basic principles of statutory interpretation. *See Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 183 (D.C. 2021) (discussing the "'basic principle' of statutory interpretation that 'each provision of the statute should be construed so as to give effect to all of [its] provisions, not rendering any provision superfluous'" (quoting *Grayson v. AT&T Corp.*, 15 A.3d 219, 238 (D.C. 2011))). It would also run directly contrary to them, because it would mean that the

elderly and disabled who moved into their dwellings before 2018 have the full panoply of their pre-amendment TOPA rights, not just the limited subset of rights expressly preserved by Section 42-3404.09(c). In short, the 2018 amendments clearly apply to tenants like Lane based on the plain text of the statute.

The legislative history bolsters our view. *Williams v. Kennedy*, 211 A.3d 1108, 1110 (D.C. 2019) ("We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." (quoting *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019))). A report from the Council's Committee on Housing and Neighborhood Revitalization describes "[t]he purpose" of the 2018 amendments as being to "exempt single-family homes from the requirements of [TOPA], *with an exception for elderly tenants . . . and tenants with a disability*." TOPA Single-Family Home Exemption Act of 2018, Comm. Rep. on Bill 22-315, at 2 (Feb. 23, 2018) (emphasis added). The Committee Report summarizes the changes to TOPA as "[a]n exemption from TOPA for all single-family homes" with "[t]he grandfathering of elderly tenants at least 62 years old and tenants with a disability." *Id.* at 8. This demonstrates a clear intent not to grandfather in tenants like Lane, who are neither elderly nor disabled.

The Council also considered and rejected a revision to the 2018 bill that would have grandfathered in an additional subset of tenants who, like Lane, were already

tenants of single-family accommodations at the time the amendments were proposed. When the proposed 2018 single-family home exemption came to the Council for its first reading, Councilmember Brianne K. Nadeau expressed concerns that the 2018 amendment "only grandfathered-in elderly tenants and tenants with a disability, and . . . did not include a carve-out for long-term tenants." Comm. Rep. on Bill 22-315, at 18. She proposed adding an exception for "long-term tenants of single-family accommodations, who have lived in their accommodations for at least ten consecutive years or longer" in order to "strengthen the position of long-term renters to stay in their homes." An Amendment to Bill. No. 22-315 offered by Councilmember Brianne K. Nadeau, at 1-2 (March 6, 2018) (amendment rejected). The Council rejected her proposal, with Councilmember Anita Bonds, the chairperson of the Committee on Housing and Neighborhood Revitalization, noting that "an exception for long-term tenants, without a sunset, recreates the problems with TOPA that this bill intends to end." *See* Council of the District of Columbia, Twenty-First Legislative Meeting, Statement of Councilmember Anita Bonds, at 38:43 to 39:00 (Mar. 6, 2018), https://perma.cc/5QWQ-YLPZ. That legislative history confirms what is clear enough from the face of the statute: The 2018 amendments apply to tenancies that predate the amendments themselves, with a limited and express carve-out for the elderly and disabled. *See Va. Uranium, Inc. v.*

*Warren*, 587 U.S. 761, 765 (2019) ("[I]t is our duty to respect not only what [the legislature] wrote but, as importantly, what it didn't write.").

Lane offers a different reading of the 2018 amendments, which would save her reading of the statute from any superfluity, but at the cost of contorting the text and walking directly into an untenable absurdity. *Cardozo v. United States*, 315 A.3d 658, 672 (D.C. 2024) (en banc) ("We are bound to avoid absurd statutory interpretations."). She argues that the best way to interpret the statute is that all tenants whose tenancies began before the 2018 amendments retain their pre-amendment TOPA rights, *except* the elderly and disabled, whose TOPA rights have been curtailed. The elderly and disabled were, she argues, "grandfathered-out" of their prior TOPA rights; thus, "all single-family home tenants—other than those that fall into the 'grandfathering' clause—still have dormant TOPA rights, so long as they started their tenancies prior to" the 2018 amendments. She posits this was a "spiteful and miserly" attempt by the Council to "punish[]" elderly or disabled tenants. That is contrary to the plain text of the statute and its legislative history, as already discussed, and it would require us to embrace the unsupported proposition that the Council acted with discriminatory animus against the elderly and disabled when passing the 2018 amendments. We will not embrace such an absurdity.

Lane also highlights that the word "retroactive" does not appear in either the statute or the legislative history, arguing that its absence suggests that the Council did not intend the 2018 amendments to apply to tenancies predating them. But we do not scour the statute or the legislative history for magic words; "it will suffice if the legislature has made its intent clear." *Apartment & Off. Bldg. Ass'n of Metro. Wash.*, 129 A.3d at 932. The Council has done so here.

Finally, Lane highlights the Department of Housing's curious statement that "[Lane] has not provided the Division with proof that [Vaughan and Fogg] failed to provide notice to [Lane] that the accommodation was registered as a condominium." That language was inapt because the house at issue was not a condominium at all, and Lane posits such carelessness suggests that the Department's Notice of Rejection was a "boiler-plate memorandum that failed to address the substantive issues raised in [her] petitions." While the language that Lane highlights was clearly not applicable to her claim here, and so bespeaks some degree of sloppiness on the Department's part, it was irrelevant to the Department's legal conclusions and so any error was harmless. The errant comment played no role in the Department's analysis and rejection of Lane's petition; Lane does not suggest otherwise. To the extent that Lane's argument is that this lack of care is a reason for us not to defer to the Department's legal analysis, we have already explained that we are not deferring to the Department's legal analysis in any event, in light of the uncertainty about the

propriety of such deference after the Supreme Court's recent opinion in *Loper Bright*, *supra* n.1.

### III. Conclusion

For the foregoing reasons, the Department of Community and Housing Development's denial of Lane's petition is affirmed.

*So ordered.*